## MYLES POOLE *v.* THE STATE.

[56 South. 184.]

1. CRIMINAL LAW. *Credibility of witnesses. Instructions.*

Where in a criminal case the defendant and several witnesses testify in his defense an instruction that "the jury might in passing upon the testimony, consider the interest which any witness might feel in the result of the suit, as shown by the circumstances arising out of the testimony and might give the testimony of each witness, only such weight as they thought it entitled to under all the circumstances," is not erroneous as being aimed at the defendant.

2. SAME.

Where there is a sharp conflict in the evidence, an instruction that "if the jury are satisfied, either from all the facts and circumstances proven on the trial, that such witness or witnesses are mistaken in material matters testified to by them, or that from any other reason their testimony is untrue or unreliable, the jury should not regard such testimony," is fatally erroneous, as permitting the jury to disregard testimony for any reason they saw proper, whatever that reason might be.

APPEAL from the circuit court of Leake county.
HON. C. L. DOBBS, Judge.

Miles Poole was convicted of manslaughter and appeals. The facts are sufficiently stated in the opinion of the court.

*O. A. Luckett* and *Flowers, Fletcher & Whitfield,* for appellant.

Instruction No. 3 is as follows:

"The court instructs the jury for the·state that they are the sole judges of the testimony, that they are the judges of the credibility of the witnesses and of the weight to be attached to the testimony of each and all of them and that the jury is not bound to take the testimony of any witness or witnesses as absolutely true, and they should not do so if they are satisfied from all the facts and circumstances, proven on the trial, that such witnesses or witness are mistaken in the material matters testified to by them or that from any other reason his or their testimony is untrue or unreliable."

There are several objections to this instruction. As applied to the facts of this case it is as plain that it is aimed at Poole and his wife or at Poole himself as it would be if their names were called. The jury is authorized to discard the testimony of Poole and his wife if they are satisfied that these witnesses are mistaken in the material matters testified to by them. We ask the court's attention to the use of the words "material matters." The material matters testified to by these witnesses is that Poole was flat on his back on the ground with three men fighting him at the time he got his knife out of his pocket and used it. If the jury believed this they would have to turn the defendant loose. Unless they were satisfied beyond a reasonable doubt that it was not true it was their duty to acquit. To be merely "satisfied" about it is not sufficient. They might be satisfied and yet have numerous and grave doubts about it. Unless the jury believe it beyond a reasonable doubt that this man did not use his knife at the time and under

the circumstances described by himself and wife it was the duty of the jury to acquit. If they were merely satisfied in their own minds that it was not true that he used the knife under the circumstances named yet if they had reasonable doubts it was their duty to give the defendant the benefit of the doubt.

This is not a correct instruction. It is to be read just as if a court had instructed the jury that if they were satisfied that the testimony for the defense is untrue then they should find the defendant guilty. Not only must the jury believe the evidence for the state beyond reasonable doubt but the jury also believes beyond a reasonable doubt that the testimony supporting a good defense is untrue. Unless this is true the defendant may be convicted upon the same evidence or the same degree of proof as warrants a verdict in a civil case. The instruction ignores the reasonable doubt. The defendant is entitled to this doubt if it arises out of the testimony for the defense or if it arises out of the state's own testimony, but this instruction warrants the jury in discarding the defense if they are merely satisfied that it is untrue.

Another fatal error in this instruction No. 3, is that the jury may disbelieve the testimony of any witness, "if they are satisfied from all the facts and circumstances, proved upon the trial, that said witnesses or witness, are mistaken in the material matters testified to by them or for any other reason or their testimony is untrue or unreliable." Not only might the jury under this instruction decide from the facts and circumstances proven at the trial that they would not believe any given witness but they might disbelieve such witness or witnesses "for any other reason." In other words the jury was not confined to the facts and circumstances proven on the trial but they might discard the testimony of any witness if "for any other reason"—presumably one not shown by the record—they believed the testimony untrue

or unreliable. This left very much discretion to the jury. They might leave the record and employ any reason they might be able to lay hold of and use it in passing upon the evidence of the witnesses for the defense.

The court will note that in deciding whether any witness or witnesses are mistaken in the material matters testified to by them the instruction requires the jury to make up their decision from "the facts and circumstances proven on the trial." But then, in addition to this, if the jury should believe "for any other reason" that the testimony of such witnesses is untrue or unreasonable then they are warranted in disbelieving it.

So it appears that in this instruction there are two errors other than the one which we desire to discuss in dealing with instruction No. 4. These two are: (1) The jury is authorized to discard the testimony of the witnesses if they are merely satisfied that it is untrue; (2) the jury is authorized to reach the conclusion that the testimony of any witnesses is untrue and unreliable from other reasons not shown by the proven facts and circumstances.

Instruction No. 4 is as follows:

"The court instructs the jury for the state that in passing upon the testimony of the witnesses for the state and for the defendant that they have the right to take into consideration the interest which any witness may feel in the result of this suit, as shown by the facts and circumstances growing out of the testimony in the case and to give to the testimony of each and every witness only such weight as they think it entitled to under all the circumstances proven in the trial.

It is difficult to conceive of any criminal case in which it is not improper to give an instruction in the form of this No. 4. Such instruction, always of necessity, points directly to the defendant. He is the witness who feels the interest in the result of the trial. His interest is direct. He is the one who must suffer in the event the

100 Miss.—11

verdict is against him. He is the one who must serve the imprisonment or pay the fine; the one who must have his liberty taken away from him; who must have years of his life appropriated by the state. Other witnesses are sympathetic.

The value of such instruction is well known to district attorneys. See in the case at bar how the only instruction asked for the state besides the two defining manslaughter bear upon his particular question. They both call the attention of the jury to the interested party testifying. The defendant's right to testify in his own behalf is of little value in the face of this instruction in the hands of a district attorney in a closing argument.

While as far as we know this court has not said that such an instruction is of necessity erroneous, it has said that such an instruction is erroneous where the defendant was the only witness in his own behalf. But the difference between a case where the defendant is the only witness in his own behalf and other cases in which there are other witnesses is one of degree only and not in kind.

In *Thomas* v. *The State,* 61 Miss. 60, the court said: "It was enough to tell the jury in the first instruction that they might consider the situation of the defendant and the motives he had to induce him to testify falsely. The addition of the words, that it was their duty to weigh his testimony carefully and with great caution, was erroneous as constituting a charge upon the weight of evidence. It was the duty of the jury to give his testimony just such weight as they thought it, under the circumstances, entitled to. When they have done this they have done all the state has a right to demand.

What the court said in this case has been modified and instruction No. 1 in that case found upon page 61 of the report would now be considered fatally erroneous even without the addition condemned by the court in that case.

In *Buckley* v. *State,* 62 Miss. 305, the court condemned the following instruction: "It is true that under the laws of this state the defendant is a competent witness in his own behalf but in weighing his evidence the jury should consider the interest he has in the result of the same and they may disregard it altogether." The court said that this instruction was clearly wrong and that "the jury had no right to disregard the testimony of the defendant merely because he was such and deeply interested in the result of the same." The statute makes a defendant a competent witness and while it is for the jury to determine the weight to be given to his evidence, it is not allowable for the court to annul the statute in effect by admonishing the jury of the interest the defendant has in the result and authorizing it capriciously and wantonly to disregard his evidence completely and entirely because of such interest. This interpretation may have been put on the sixth instruction, although not so intended by the learned judge who gave it, and it was not cured by the proper instructions for the accused on the same subject. His own testimony may be the only shield of an innocent person. A defendant has the right to submit his testimony to the jury to be judged of by it, uninfluenced by any suggestion of its probable falsity or an authorization of the jury to throw it aside as unworthy of belief because of the strong temptation to defendant to swear falsely. There is little danger that juries will be unduly influenced by the testimony of defendants in criminal cases. They do not need any cautioning against too ready credence to the exculpation furnished by one on trial for a felony. The accused should be allowed to exercise his right to testify unimpaired by any suggestion calculated to detract from its value in the estimation of the jury."

In that case the court announced the principle and employed the reason which we think should control in the case at bar. Why should the court give instructions

which point directly to the defendant's evidence? Why should the jury be told, not in so many words but indirectly, that because the defendant is so directly interested he is not worthy of belief? If we are going to permit him to testify why discredit his testimony by calling the jury's attention to his direct interest in the result? It will not do to say that other people have an interest and that such other interests may be discussed under the same instructions. The interest of the other parties is overshadowed by that of the defendant; the person alone who is vitally concerned in the result of the criminal trial is the defendant himself. In the case at bar this instruction was aimed at the defendant. The state recognized that it was a close case on the facts and that pressure would have to be brought to bear upon the jury in order to get Dorsey, Doherty and Poole and his wife overthrown. Instead of depending upon natural and reasonable arguments which may be made the district attorney called in the aid of the court to get the court to give instructions which showed the jury that in the estimation of the trial judge the evidence of Poole and his wife was not to be seriously considered.

What Judge Campbell said in the *Buckley case, supra,* was reaffirmed and approved by this court in *Woods* v. *State,* 67 Miss. 575.

*Carl Fox,* assistant attorney-general, for appellee.

Learned counsel for appellant makes as strong an argument as was possible to be made, that instructions numbers three and four, granted the state, were erroneous. Nevertheless, if the court holds that these instructions are erroneous, it will have to overrule its former decisions.

The two specific objections made to instruction number three are to that part of it which informed the jury: ". . . The jury is not bound to take the testimony of any witness or witnesses as absolutely true, and they should

not do so if they are satisfied from all the facts and circumstances, proven on the trial, that such witness or witnesses are mistaken in the material matters testified to by them, or that from any other reason, his, or their, testimony is untrue or unreliable.''

The contention is made by counsel that it was error to instruct the jury that they might reject the testimony of any witness as to any material fact ''if they were satisfied,'' from the evidence, that their testimony was not true. Counsel says that it must be proven beyond a reasonable doubt, that a witness' testimony, about any material fact, is untrue, before the jury will be warranted in rejecting that witness' testimony. That would be extending the doctrine of 'reasonable doubt' to an unreasonable length. In First Blashfield, Instructions to Juries, section 301, it is said:

''The reasonable doubt which will justify and require an acquittal must be as to the guilt of the defendant, when the whole evidence is considered. The law does not require the jury to believe that every fact in the case has been proved beyond a reasonable doubt before they can find the accused guilty. The reasonable doubt which will work an acquittal must not be to any particular fact in the case.''

In section 302, it is said:

''There are, however, a number of decisions in which it has been held erroneous to refuse to instruct that a reasonable doubt as to a particular fact essential to constitute guilt authorizes an acquittal.''

The doctrine of reasonable doubt has never been extended further than that each material fact—each fact necessary to constitute the crime—must be proven beyond a reasonable doubt, and the weight of authority is that it extends no further than a reasonable doubt of the guilt of the defendant upon the whole evidence. First Blashfield, Instructions to Juries, a part only of which is quoted above. If it were the rule that before

the jury would be justified in rejecting the testimony, as a whole, of any witness, or the testimony of any witness about any material fact, it would have to be proven beyond a reasonable doubt that the witness was not telling the truth would lead to inextricable confusion, and to a multitude of issues to be decided by the jury.

Before the jury would ever arrive at a point where they could consider their verdict, they would have to try each witness, sometimes twenty or thirty, and not only pass upon each witness' testimony as a whole, but separately upon each witness' testimony as to each material fact testified to by him.

It is said the instruction is erroneous because it authorizes the jury to reject the testimony of any witness, and about any material matter, if the jury believe "from any other reason his or their testimony is untrue and unreliable."

In *Godwin* v. *State*, 73 Miss. 873, the following instruction was granted the state:

"The court instructs the jury that in this case they are the sole judges of the testimony of each and every witness who has testified in this case, and they have the right, as jurors in this case, to reject the testimony they believe to be discreditable and not worthy of belief."

That instruction did not require that the jury's belief that the witness' testimony was not true should be founded "on facts and circumstances proven on the trial." It authorized the jury to reject any testimony of any witness if they believed it to be untrue, whether their belief was founded upon something which occurred at the trial, or from their knowledge of the witness' reputation for veracity, obtained before the trial.

Judge Whitfield, delivered the opinion of the court, said:

"We do not think the fifth instruction within the condemnation of *Buckley* v. *State*, 62 Miss. 705. It seems incorrect. It might have been much more clearly put,

but it does not point out the defendant's testimony, and can hardly be said to have told the jury that they could arbitrarily reject the testimony of any witness.''

Under the third instruction granted the state in this case, the jury could not reject the testimony of any witness without having a reason for believing that the testimony was untrue; and what reason would the jury have outside of what they saw and heard at the trial, unless perhaps some of them were acquainted with the witness, and might have believed him to be a notorious liar? Even if that were true, they could not put out of their minds the knowledge of the weight of the testimony of such witness. The law contemplates that the jurors, in all probability will know the witness. It was a common-law right, and it has been perpetuated in all the Constitutions of Mississippi, that persons charged with crime, should be tried by the jury of the vicinage. Section 26 of the Constitution of 1890.

Instruction number three tells the jury that they could reject the testimony of witnesses if they were satisfied from all the facts and circumstances proven on the trial that the testimony was untrue. But in addition to the facts and circumstances proven, the jury had the right to take into consideration the appearance of the witness on the stand, their manner of testifying, the readiness with which they answered, and attempts to evade questions.

These reasons for rejecting the testimony of any witness or witnesses were in the mind of the judge when he granted the instruction informing the jury that if they were satisfied, ''from any other reason,'' of the falsity of the testimony, they might reject it. Such circumstances as the appearance of the witness on the stand, attempts to evade questions, and numerous others, are not circumstances ''proven on the trial.'' Of course, the instruction could have been improved. Nevertheless we cannot control our belief or disbeliefs. Be-

lief and disbelief are effects, and for every effect, there
must be a cause. The jury were locked up during this
trial. There is no charge that any one of them was in-
competent, or that they were communicated with during
the trial, or that any undue or outside influence, during
the trial, was brought to bear upon them. They could
not arbitrarily reject the testimony of any witness under
this instruction because they were required to believe
and have a reason for their belief, that the witnesses
were not telling the truth before the court rejected any
of the testimony.

The fourth instruction granted the state is the same
instruction that has been granted innumerable times, and
so far as I know, has never been attacked. When the de-
fendant goes upon the stand, his testimony is to be
weighed in the same scales as the testimony of every
other witness. It would be extraordinary if section 1918,
of the Code, has the effect of requiring that the testi-
mony of the defendant should have greater weight than
the testimony of another whose interest might be as
great. This section, making the accused a competent
witness in his own behalf, was enacted in 1882.

*Buckley* v. *State,* 82 Miss. 705, is the leading case con-
struing the law. It seems that until Buckley's case was
decided, it was proper to single out the defendant in an
instruction that the jury, in weighing his testimony, could
take into consideration his situation, and the motives
which he might have had for testifying falsely.

See *Thomas* v. *State,* 61 Miss. 60, in which the follow-
ing instruction was given: "While the defendant is a
competent witness under the law, yet the jury are the
sole judges of the credibility of the witnesses, and in
weighing the testimony of the defendant, they are at lib-
erty to take into consideration his situation, and the mo-
tive or motives he may have for testifying falsely; and
it is the duty of the jury to weigh his testimony carefully,
and to scrutinize the same with great caution."

The court held that only the latter part of the instruction was erroneous, that is, "that it is the duty of the jury to weigh the testimony carefully, and to scrutinize the same with great caution." Such instructions are held to be proper in all jurisdictions where the question has arisen, except Mississippi, Kentucky, and Texas. See Blashfield, Instruction to Juries, sections 222-228.

In Buckley's case the following instruction was granted the state: "The accused is a competent witness in his own behalf, and they should give his evidence such consideration as they may think it fairly entitled to."

This instruction was not that the jury might consider the interest of the defendant, but that they "should" consider his interest, and in addition, told the jury that they may disregard it altogether. This instruction authorized the jury to decline to consider the accused as a witness at all, which of course was in the very face of the statute, and was condemned by Judge Campbell. Again Judge Campbell said, "There is little danger that juries will be influenced by the testimony of defendants in criminal cases;" and "They do not need any cautioning against too ready credence to exculpation furnished by one on trial for a felony." Of course, he did not mean that the testimony of a defendant should be weighed by any other rule than the testimony of any other interested witness.

This case has been construed in subsequent cases to mean that an instruction apply to the defendant alone, that the jury may consider the interest of the witness in determining the weight of the witness' testimony is improper, I have no quarrel, whatever, with that construction of the opinion in Buckley's case, but the point is, that the court has never gone to the length of holding that an instruction to the jury that they might consider the interest of any witnesses in the suit, in weighing their testimony, was improper, because the defendant

might have a much greater interest than any other witness.

The case of *Buckley* v. *State,* has been followed in the following cases: *Woods* v. *State,* 67 Miss. 576, 7 So. 495; *Godwin* v. *State,* 73 Miss. 883, 19 So. 712; *Brown* v. *State,* 75 Miss. 846, 23 So. 422; *Townsend* v. *State,* 12 So. 209; *McEwen* v. *State,* 16 So. 242; *Rucker* v. *State,* 18 So. 122.

In *McEwen* v. *State, supra,* the instruction was that the jury might disregard the testimony of any witness interested in the result of the case, or of any witness related to the defendant. It did not require that the jury should disbelieve such testimony before they should disregard it, and therefore, was squarely in the face of the statute making the defendant a competent witness.

In *Rucker* v. *State, supra,* the instruction was the same as that in *McEwen* v. *State,* with the addition that the jury might disregard the testimony of any interested witness, "if, in their judgment, it is right to do so."

In the *Townsend* and *Woods cases, supra,* the defendants were the only interested witnesses, and the same is true of *Gaines* v. *State,* 48 So. 182, which followed *Woods* v. *State,* 67 Miss. 575, and *Smith* v. *State,* 90 Miss. 111, and the defendant was the only witness in his own behalf.

In *Godwin's case,* 73 Miss. 873-883, the reason for holding that the instruction was not improper, was that "it does not point out the defendant's testimony."

The question, however, is settled by *Brown's case,* 75 Miss. 842, 846, in which the following instruction was given: "The jury are the sole judges of the credibility of witnesses, and in determining whether a witness will be believed or not, they are not bound by the opinion of other witnesses but have a right to consider all the testimony of the case, the motives and the interest of the witnesses, the nature if his testimony and all the facts in evidence throwing light upon the point."

The court said: ''The third instruction for the state was not erroneous. On its face it would appear to be directed at the evidence of the state's witnesses who were sought to be impeached. But if it may be supposed to have embraced the defendant in its general terms, it will still not be erroneous. It is not the charge condemned in *Buckley's case,* 62 Miss. 705, and in *Woods case,* 67 Miss. 575. In this third instruction there is no suggestion of the probable falsity of the defendant's evidence, nor any authorization to the jury to throw it aside as unworthy of belief. Surely, a defendant, who offers himself as a witness must be content if placed upon the footing of all other witnesses.''

I might have cited the last named case and disposed of this question, but it was so earnestly argued that the fourth instruction granted the state in the case at bar is erroneous that I desire to direct the court's attention to the fact that in no case has it ever been even squinted at that an instruction like this fourth instruction is improper, except where it is applicable to the defendant alone.

Argued orally by *J. N. Flowers,* for appellant, and *Carl Fox,* assistant attorney-general, for the state.

Whitfield, C.

There is a very great conflict in the testimony in this case, and especially as to whether the defendant stabbed the deceased on the floor of the gallery, or after the deceased had knocked him off on the ground and was on him, beating him. Only one witness for the state testifies that the stabbing was done on the gallery. The defendant himself and another witness, Clinton Boyd, testified that the stabbing of the deceased by the defendant was done while the defendant was on his back on the ground and deceased was on top of him, beating him

in the face. The wife of the defendant testifies substantially to the same thing, because she testifies that she saw the defendant get his knife with his left hand out of his pants pocket and open it. It is not easily conceivable that he could have used this knife, which he then for the first time opened, on the gallery. The state asked, in this condition of the record, only two charges, No. 3 and No. 4, excepting the first and second, the first of which was a mere definition of murder, and the second, as to the form of verdict. The third and fourth charges presented the vital points in the case, and are as follows:

"3. The court instructs the jury, for the state, that they are the sole judges of the testimony, that they are the judges of the credibility of the witnesses and of the weight to be attached to the testimony of each and all of them, and that the jury is not bound to take the testimony of any witness or witnesses as absolutely true, and they should not do so if they are satisfied, from all the facts and circumstances proven on the trial, that such witness or witnesses are mistaken in the material matters testified to by them, or that from any other reason his or their testimony is untrue or unreliable.

"The court instructs the jury, for the state, that in passing upon the testimony of the witnesses for the state and for the defendant that they have the right to take into consideration the interest which any witness may feel in the result of this suit, as shown by the facts and circumstances growing out of the testimony in the case, and to give to the testimony of each and every witness only such weight as they think it entitled to under all the circumstances proven in the trial."

We cannot concur in the contention of the appellant that there is, on the facts in this record, any error in the fourth instruction given for the state. It is very earnestly insisted that the charge was aimed at the defendant; but we have just pointed out above that there

were two other witnesses, besides the defendant, one who testified expressly, and the other practically, like the defendant himself, and we cannot say, in view of this, under our previous holding, that this instruction was aimed at the defendant.

But the third charge given for the state is expressly condemned in *Riley* v. *State,* 75 Miss. 354, 22 South. 890, and *Gables* v. *State,* 54 South. 833, approving the Riley case. The language in that charge, that "if the jury are satisfied, either from all the facts and circumstances proven on the trial, that such witness or witnesses are mistaken in material matters testified to by them, or that from any other reason their testimony is untrue or unreliable," is fatally erroneous. The court should not have told the jury, in the alternative, that they might be satisfied from any other reason that the testimony was untrue. This left the jury at liberty to disregard the testimony for any reason they saw proper, whatever that reason might be; and we cannot say on this record that it is not reversible error.

Manifestly this charge was a vital one in the case, and, being fatally erroneous, for the reason stated in the *Riley case, supra,* we are constrained to hold that it constituted in this case, on the sharp conflict in the testimony, reversible error.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for reasons therein set out the judgment is reversed and the cause remanded.