**GULLA, Plaintiff-Appellant, v REYNOLDS, et, Defendants-Appellees.**

Ohio Appeals First District, Hamilton County.

No. 6919. Decided March 22, 1948.

Ginocchio & Ginocchio, Cincinnati, for plaintiff-appellant.
Robert G. McIntosh, Cincinnati for defendants-appellees.

## OPINION

By HILDEBRANT, J.:

Plaintiff recovered a judgment against the non-owner driver of a truck, based on his negligent operation thereof.

In a supplemental petition filed by virtue of §9510-4 GC, he now claims the owner's liability insurance policy, by the terms of its so-called omnibus clause, extended coverage to the driver of the truck. The defendant company contends that the circumstances of this case fail to bring the driver within the terms of the policy.

The so-called Omnibus Clause reads:

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

The facts are:—That on the day of the accident the driver, who was known to the owner, contacted him at his furniture store, seeking casual employment. The owner employed him to make a delivery of furniture and put him in possession of the truck by giving him a note to present at the parking lot a block away where the truck was stationed. He also hired as helper a woman companion of the driver and together they made the delivery and returned to the store in approximately an hour. The owner paid them and the employment then and there terminated, and there is nothing in the record to show

that the driver was to do anything further with the truck. Shortly thereafter, and while still on the premises, and at approximately 3:00, P. M., although conflicting testimony fixes the time up to 5:00, P. M., the driver bought a small item of furniture and requested permission of the owner to deliver it in the truck to the home of his helper, which was only a little more than a block distant from the store. The owner granted that permission and testified:

"A. * * * he asked if he could deliver the baby bed to his house a block away, and I said he could and deliver the truck to a truck place which was a block from his place and block from my store.

"A. Between two-thirty and three o'clock in the afternoon.

"Q. Did you go to the parking lot to find out if he ever returned the truck?

"A. No I didn't.

"Q. Do you know if truck ever returned to the parking lot?

"A. No, it was not returned.

"Q. Did he have any other jobs to do for you that night?

"A. None.

 * * * * *

"Q. He asked if he could deliver this bed to Fourteenth and Main.

"A. Yes.

"Q. As soon as he did that you instructed him to take your truck to the parking lot on Walnut Street?

"A. That's right.

 * * * * *

"Q. Did he make delivery?

"A. Yes, made delivery in perhaps three-quarters of an hour; brought the truck back to the store and made purchase of the baby bed and asked if he could use the truck to take it to the house and then he would take it to the parking lot.

 * * * * *

"Q. Then you gave him permission to use the truck?

"A. Yes; he could have carried it but he asked if he could use the truck and I said he could.

"MR. McINTOSH: From there he was to take the truck to the lot?

"A. Yes.

"Q. That was the extent of your promise as to using the truck?

"A. Absolutely.

"Q. You gave him no permission to ride around in it or for any other purpose?

"A. No.

" MR. GINOCCHIO: Mr. Straus, did you issue positive orders to him, telling him—Don't do this or that; or—don't drive here or drive there?

"A. Well, as I say, my gasoline allotment was very small; I certainly would have objected. I told him to take the truck to the lot after delivering the baby bed.

"Q. No, I guess you didn't understand my question; Did you expressly tell him—don't use the truck for any other purpose but delivering that?

"A. My express instructions were to take the truck to the parking lot after delivering the baby bed.

"Q. State what you told him with reference to taking the truck.

"A. So far as I know, I did not tell him he could not take that truck on a pleasure trip, but it certainly was understood.

"THE COURT: That was when you gave him instructions to take the truck from your store with the baby bed?

"A. Yes I did.

"THE COURT: Did that control you in your idea of letting him use it?

"A. Yes.

"THE COURT: Because it was a very short distance?

"A. That is right."

The record further shows that gasoline rationing was in effect at the time and the owner accordingly was concerned with limiting the use of his truck. The accident happened shortly after 8:00, P. M., that evening.

The trial court, without the intervention of a jury, found as a fact that the actual use of the truck by the driver in this case at the time of the accident was not with permission of the named assured. Indeed, that its use was in violation of §12619 GC, and entered judgment for the defendant.

There are many decisions construing and applying permissive use provisions in liability insurance policies. These authorities divide into generally two doctrines. The so-called minority rule, developed in construing the older policies, where the phraseology was "use with permission," was that where permission, express or implied, was given by the owner to use the car in the first instance, such use was covered by the policy, even though the person using the car may have put it to a use far beyond that contemplated by the owner at the time permission to use was given. This doctrine was softened somewhat by those cases holding coverage to be extended when

the deviation from the contemplated use was slight as distinguished from a deviation of great extent. This doctrine was criticized as providing a rule necessarily variable and uncertain.

Authorities holding the above are: Dickinson, Admr. v Maryland Casualty Co., 101 Conn. 369; 125 A. 866; Stovall v N. Y. Indemnity Co., 157 Tenn. 301, 8 S. W. (2nd) 473.

The other, or majority doctrine is, that permission by the owner to the use of his car by another includes only such use as was reasonably contemplated by the owner, as shown by the circumstances, and that while, even under this doctrine, a slight deviation would not necessarily exclude coverage, yet a use by the operator outside the scope of the owner's contemplated permission excludes such use from being the permitted use within the terms of the policy.

Authorities in line with the above are: Frederickson v Employers' Liability Assurance Corp., 26 Fed. (2nd.) 76; Trother v Union Indemnity Co., 35 Fed. (2nd) 104; Laroche v Farm Bur. Mut. Ins. Co., 7 Atl. (2nd) 361. Extensive annotations on this subject are contained in 72 A. L. R. 1398, and 106 A. L. R. 1253.

In more recent policies, and apparently to escape the so-called minority rule above referred to, the phraseology has been changed to "actual use" with permission, etc. In Appelman on Insurance Law and Practice, Vol. 7—Casualty Insurance—Section 4354, at page 132, it is stated:

"The term 'actual use', as employed in the present policy, was drafted to confine the coverage to situations where the employment made of the vehicle at the time of the accident was within the scope of the permission granted."

It seems logical to this court that the term "actual use" be construed as referable to the use being made of the car at the time and place of the accidnt and if that be outside the reasonable scope of the permission granted to hold that coverage is not extended to the driver. See: Words and Phrases, Vol. 2, Perm. Ed., 1947 Cum. Pocket Part., @ p. 54.

The judicial struggling to formulate a rule may be accounted for by reason of this being a factual question and the cases show an infinite variety of circumstances.

Here, the permission was explicit, and while no affirmative instructions against other use were given, yet all implications to be drawn from the circumstances tend toward definite limitation to make delivery but little more than one block away, as to distance, and return the truck directly and immediately to the parking lot as to time.

Some three hours later and beyond the area necessary to the contemplated use and beyond the scope of the purpose for which the driver was in possession and outside the right of user, and we agree with the trial court, even outside the pale of the law, making it an offense to operate a motor vehicle without the consent of the owner, this accident occurred.

We, therefore, hold that the actual use by the driver here was not with permission of the named assured, within the terms of the policy.

The judgment of the Court of Common Pleas is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion and judgment.