191 So.2d 541 (1966)
EMPLOYERS MUTUAL CASUALTY COMPANY
v.
J.M. POE.
No. 44071.
Supreme Court of Mississippi.
November 7, 1966.
*542 Davidson & Beach, Jackson, for appellant.
James D. Dobbs, Ackerman, Cason Rankin, Tupelo, W.D. Coleman, Jackson, for appellee.
BRADY, Justice.
This is an appeal from a judgment of the Circuit Court of Lee County where the cause was tried by agreement without a jury. Judgment in the sum of $3,000 was entered by the circuit court, together with interest at the rate of six percent per annum and court costs in the sum of $130.55.
The facts involved in this appeal are conceded by appellee in his brief to have been accurately and fully set forth in appellant's brief and, in view of the fact that there was a stipulation of the parties also upon which the garnishment trial was heard, the appellee did not feel called upon to repeat the pertinent facts. The stipulation of the parties agreed upon is in accord with the facts as revealed in the record. It was stipulated between the parties that the judgment was entered in the Circuit Court of Lee County on or about November 18, 1961, in favor of the appellee, J.M. Poe, against John Fletcher Tucker, Jr., in the sum of $3,000, with interest at the rate of six percent, for the wrongful death of plaintiff's intestate son, J.S. Poe, which was the result of an automobile accident in Chickasaw County, Mississippi, on or about November 20, 1959. The deceased, J.S. Poe, was an occupant of a 1952 Ford automobile which belonged to the Tupelo Auto Sales, a co-partnership, which was being driven by an employee, John Fletcher Tucker, Jr. The automobile in question was held for sale in the course of its usual business by the Tupelo Auto Sales.
The stipulation further agrees that John Fletcher Tucker, Jr., died intestate on or about March 2, 1962, and that the said judgment was thereafter revived against his heirs at law by the Circuit Court of Lee County, Mississippi, on April 13, 1964. This judgment was properly enrolled on the judgment rolls in the office of the Circuit Clerk of Lee County.
It was agreed between the litigants in this cause that there was in force and effect on November 20, 1959, the date of the accident, a policy of insurance or a contract of indemnity against liability, being policy number 4165185. Under this policy Employers Mutual Casualty Company, garnishee-defendant below, was obligated to pay on behalf of the Tupelo Auto Sales all sums which Tupelo Auto Sales or any other person by the terms and provisions of said policy became legally obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the use of the 1952 Ford automobile involved in the accident.
It was further agreed between the litigants that the judgment debtor, John *543 Fletcher Tucker, Jr., the employee of Tupelo Auto Sales, took the said automobile into his custody from the used car lot of Tupelo Auto Sales on West Main Street in the city of Tupelo, Lee County, by and with the consent and permission of Tupelo Auto Sales. It was additionally stipulated:
However, it was the understanding at the time this permission was granted by the said employer to John Fletcher Tucker, Jr., that he would use said automobile only for the purpose of transportation to his home in Saltillo, Mississippi, about two miles north of Tupelo, Mississippi, and return to work therein the following morning.
The stipulation further provides that the said John Fletcher Tucker, Jr., was not en route home or returning therefrom at the time the accident occurred which resulted in the death of J.S. Poe. The agreement specifies that the accident occurred approximately seventeen miles south of Tupelo, Mississippi, on Highway 45, and about two miles north of Okolona, Mississippi, in Chickasaw County, Mississippi, at a time when the said John Fletcher Tucker, Jr., was not acting within the scope of his employment nor in the furtherance of the business of his employer, Tupelo Auto Sales.
The stipulation likewise provides:
That a Writ of Garnishment has been issued and served upon Employers Mutual Casualty Company, Garnishee-Defendant, based upon a Suggestion filed in this Cause alleging that Employers Mutual Casualty Company, Garnishee-Defendant, by reason of the aforesaid policy or contract of indemnity against liability is indebted to the heirs-at-law of the said John Fletcher Tucker, Jr., deceased, for the payment of said judgment and costs, which is denied by the said Employers Mutual Casualty Company * * *.
It was expressly stipulated that, although the original policy number 4165185 was not available to the parties, the attached printed policy form, which was the standard garage liability policy written by Employers Mutual Casualty Company on the date of issuance of said policy, contained the identical terms of the policy issued to Tupelo Auto Sales as above set forth. Although the policy does not reveal the exact amount of coverage, it provides a maximum limit of liability of $5,000 per person for personal injury or death.
The stipulation also provided that the garnishment proceeding could be heard by the circuit judge without jury in term time or in vacation. It was finally agreed that the stipulation should in nowise preclude either party thereto from introduction of any and all other admissible evidence desired by either party in the establishment or defense of the liability of Employers Mutual Casualty Company.
It should be noted that the original suit by the plaintiff, J.M. Poe, was against George Sheffield, Hoyt Sheffield, and James Sheffield, d/b/a Tupelo Auto Sales, and John Fletcher Tucker, Jr.; that upon motion of the defendants a peremptory instruction was granted to the defendants, George Sheffield, Hoyt Sheffield, and James Sheffield, and the case proceeded to the jury against the defendant, John Fletcher Tucker, Jr., only, against whom the $3,000 verdict was rendered.
Defendant's and plaintiff's motions for a new trial were overruled. No appeal was taken from said judgment and on March 2, 1962, John Fletcher Tucker, Jr., died, leaving his widow, Mrs. Martha Whitaker Tucker, and minor children, John F. Tucker, and Sarah Jane Tucker. No administration was had upon the estate. Scire facias was issued to the above named heirs of the said John Fletcher Tucker, Jr., commanding them to appear at the regular term of the Circuit Court of Lee County, to show cause, if any, why said judgment should not be revived against them. The record discloses that no answer was made with response to the scire facias and that a default judgment was taken thereon. Thereby the judgment was revived as to the estate, real, personal and mixed, of the deceased. Upon this judgment the suggestion for writ of *544 garnishment was issued. Upon answer and contest thereof, trial was had and judgment was entered thereon in the sum of $3,670.55 against appellant, from which judgment this case was appealed.
There are but two errors assigned for consideration by this Court, the first being that the lower court erred in entering judgment in the garnishment proceeding upon a dormant judgment which had not properly or effectively been revived, and second, that the judgment of the lower court is contrary to the law and the evidence. Since the disposition of the second error assigned will dispose of the rights of the litigants in this cause, it is unnecessary for this Court to consider, and it does not consider, the first error assigned.
In determining whether or not the judgment of the lower court is contrary to law and evidence, it should be noted that the insurance policy issued by the appellant to Tupelo Auto Sales was a garage liability policy. Although the original policy was lost or destroyed and could not be introduced at the trial of the garnishment proceeding, nevertheless, by agreement of the parties, a blank specimen of the policy was introduced in lieu of the original policy, and it is from this agreed copy of the policy that our conclusions are based. It contains the usual insuring agreement with respect to bodily injury liability whereby the appellant agreed to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards thereinafter defined.
It can be safely stated that appellant owes nothing under its policy unless appellee has shown that John Fletcher Tucker, Jr. was an insured within the meaning of the policy at the time of the accident. The policy provides, under "Definition of Hazards," as follows:
(A)nd the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations * * *.
The record discloses that the automobile used on the night of the fatal accident was one which fell within the operations covered by the policy of insurance issued by the appellant.
Turning now to the "Definition of Insured" as reflected in the contract of insurance, we find these relevant parts:
With respect to the insurance under coverages A, B and D the unqualified word "insured" includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. (Emphasis added.)
It is apparent that Tucker, being any person, could properly be classified as an insured provided that at the time of the use of the automobile Tucker was acting within the scope of his duties as such or that his actual use of the automobile was at the time with the insured's, the employer's, permission.
We do not find that this Court has ever construed the precise question before it as presented by the designated portions of this particular insurance policy. Specifically stated, we have never been asked to determine, as we are in this case, whether or not the actual use by a bailee or an automobile covered by a policy of insurance must be with the express permission of the bailor or the one primarily insured. Thus, *545 we are presented with the problem of construing the omnibus clause of the policy in the case at bar. Though not argued at length by the appellee, we do not believe that the policy in the case at bar presents such ambiguity as could be resolved in favor of the appellee. A careful study of the policy convinces us that except for the interpretation of the words "actual use" there is no ambiguity. Griffin v. Maryland Cas. Co., 213 Miss. 624, 57 So.2d 486 (1952). We stated in that case:
Under our law, if an insurance contract is plain and unambiguous, it should be construed as written, and like any other contract. Mississippi Mutual Life Insurance Company v. Ingram & Laud, 34 Miss. 215; Continental Casualty Company v. Hall, 118 Miss. 871, 80 So. 335. (213 Miss. at 631, 57 So.2d at 489.)
This same rule was reaffirmed in Farmers Mutual Ins. Association v. Martin, 226 Miss. 515, 84 So.2d 688 (1956). Therein we said, in substance, that if the insurance contract is plain and unambiguous it should be construed as written, like any other contract.
In Hawkeye Casualty Company v. Western Underwriter's Association, 53 F. Supp. 256, 262 (D.C.Idaho 1944), the Idaho court made this statement:
The authorities are uniform that an insurance contract is to be construed most favorably to the insured, and that no strict technical interpretation of the contract should be made, however, the provisions of this policy are not ambiguous and the clause is not susceptible to two different constructions where the policy provides that "the actual use is with the permission of the named insured." This clause was a known part of the stipulations of the policy. It should receive a fair and reasonable interpretation according to its terms and obvious import.
A study of pertinent insurance law and a reading of texts thereon reveal that in the past years policies of this type which contained an omnibus clause insuring persons other than the named insured had a provision therein that the "use of the automobile be with the permission of the named insured." Subsequently, a change in the wording of the standard policy form took place, and in lieu of the word "use," the words "actual use" were substituted. It is the opinion of text writers that the employment of the term "actual use" was to make it clear that the use made of the vehicle at the time of an accident had to be one actually contemplated by the parties when the original bailment was made.
In Gulla v. Reynolds, 82 Ohio App. 243, 81 N.E.2d 406 (1948), the court stated that the use of the phrase "actual use" should be construed as referring to the use being made of the vehicle at the time and place of the accident, and if that use be outside the reasonable scope of the permission granted, coverage would not be extended to the driver.
In 5 A.L.R.2d 600-660 (1949), there is ample annotation on the subject of the coverage of automobile insurance policies with respect to the "omnibus clause." It is there pointed out that the courts which have been called upon to pass upon the question presented by this appeal, namely, the effect of a deviation from the scope of permission, have adopted three different rules. The first is the strict or conversion rule, which holds that the use of the car must be within the permission of the insured within the meaning of the "omnibus clause." The permission, express or implied, must have been given to the employee, not only to the use of the car in the first instance, but also to the particular use being made of the car at the time in question. The second rule entertained in some jurisdictions is called the liberal rule. It holds that the employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is "with permission" though that use may be for a purpose not contemplated by the insured when he departed with possession of the vehicle. This is sometimes known as the "despite hell or high water rule." The *546 third rule is the moderate or minor deviation rule, wherein it is held that a slight deviation from the scope of the authority or permission granted will not be sufficient to exclude the employee from the coverage under the "omnibus clause." Under this rule only a material deviation will be held to constitute a use of the automobile without the employer's implied permission.
The strict or conversion rule has been adopted in Michigan. The liberal or initial permission rule has been adopted by our neighboring state, Louisiana. The third rule, known as the moderate or minor deviation rule, has been adopted by a majority of the states, at least twenty-two in number, among them, Georgia, Kentucky, Pennsylvania, Texas and Virginia. In 45 C.J.S. Insurance § 829 (1946), there is found a list of these authorities and an interpretation and analysis of the "actual use" clause. This moderate or minor deviation rule has been summarized as follows:
Permission, in order to extend the protection of the policy, has been held by some authorities to mean a consent to use the car at a time or place, or for a purpose, authorized by insured, so that a different use is not within such protection. (45 C.J.S. at p. 898.)
It is not the intention of this Court to adopt categorically the application of any one of the three dominant rules in operation in the various jurisdictions in this country, but we do hold that the "omnibus clause" in the insurance contract in the case at bar is not ambiguous and that the actual use contemplated in the insurance policy was permissive use; that is, that use which was precisely contemplated by the bailor and bailee and which has been agreed upon by the litigants herein, as shown by the stipulation of the parties.
The record in this case shows the following pertinent testimony given by Mr. Lucius Scruggs, the employer of the deceased, Tucker:
Q. Go ahead and answer the question, please, sir. What was the conversation you had with John Fletcher Tucker, Jr., on the afternoon of November 20, 1959, concerning the use of an automobile owned by Tupelo Auto Sales?
A. At quitting time that afternoon, his car was out of running order, he was waiting around for me to carry him home. I told him he could take that car and go on home and back to work in the morning, if he was not going anywhere else, and he said he was only going home.
Q. State whether or not the automobile was lent to him with that specific limitation.
A. It was.
This express permission authorized and permitted the deceased, Tucker, to drive the automobile a distance of approximately two miles in a northerly direction from Tucker's place of employment to his home and another two miles upon his return in the morning. There was no express permission given for him to go anywhere else and he so assured his employer. The record shows, however, that instead of going north, Tucker went south, a distance of some twenty miles.
The record conclusively shows that he was so intoxicated that he did not know where he was at the time of the collision. The record discloses that he picked up the deceased and that both were on a solely personal mission, which consisted of going to Okolona, Mississippi, to see one Max Keith. The testimony of Max Keith's wife was to the effect that Tucker was very drunk, when he arrived and left.
Viewed solely from a factual standpoint, it appears to us that the only reasonable conclusion which can be reached is that there is not presented here a slight deviation from the scope of the permission granted, but, to the contrary, there is such a violent deviation on the part of Tucker that it cannot be said reasonably that the employer could have possibly anticipated that Tucker *547 would deviate from the explicit permission granted and engage upon a venture such as is presented here. Tucker's unauthorized use of the care was purely for his own esoteric interest. There is no proof in the record to even intimate that the employer-insured knew that Tucker was a drinking man or that he had in the past utilized cars belonging to the insured solely for personal reasons as he did on the night in question. There is no proof in this record that the insured ever permitted Tucker to utilize cars indiscriminately for purely personal reasons. To the contrary, the record indicates that the insured was careful as to the extent to which the insured cars were used and, in the instance involved, required the deceased, Tucker, to assure him that he would not go anywhere else in the car except to his home, and return.
The wisest rule appears to be the middle ground chosen by the majority of the courts of this country. Hodges v. Ocean Acc. & Guarantee Corp., 66 Ga. App. 431, 18 S.E.2d 28 (1941); Laroche v. Farm Bureau Mut. Automobile Ins. Co., 335 Pa. 478, 7 A.2d 361 (1939); Salitrero v. Maryland Cas. Co., 109 S.W.2d 260 (Tex.Civ.App. 1937); Aetna Cas. & Surety Co. v. Anderson, 200 Va. 385, 105 S.E.2d 869 (1958).
Having concluded that Tucker was guilty of a violent deviation from the permission which was granted by the insured employer, we cannot say with any assurance that the acts of Tucker were within the contemplation of the appellant's insurance policy. Therefore, under the minor deviation rule and under the facts which are present in this case, we must hold that the lower court erred in finding for the appellee, and the judgment is reversed, and judgment is entered here for the appellant.
Reversed and judgment entered for appellant.
ETHRIDGE, C.J., and JONES, INZER and ROBERTSON, JJ., concur.