209 So.2d 630 (1968)
The TRAVELERS INDEMNITY COMPANY
v.
Mrs. Opal WATKINS.
No. 44611.
Supreme Court of Mississippi.
April 15, 1968.
Rehearing Denied May 13, 1968.
*631 Wilbourn, Lord & Williams, Meridian, for appellant.
Laurel G. Weir, Philadelphia, for appellee.
ETHRIDGE, Chief Justice:
This case is a sequel to Riverside Industries of Philadelphia v. Watkins, 195 So.2d 844 (Miss. 1967). In the former case this Court held that David Nunn, who was driving a truck loaned to him by Riverside Industries of Philadelphia (hereinafter called Riverside) at the time he negligently injured the appellee, Mrs. Opal Watkins, was not within the scope of his employment and therefore Riverside was not liable to Mrs. Watkins.
The present case is a garnishment proceeding, in which Mrs. Watkins, the judgment creditor of Nunn, filed a suggestion of garnishment against The Travelers Indemnity Company (hereinafter called Travelers), suggesting that Travelers was indebted to Nunn under its automobile liability insurance policy covering the truck Nunn was driving when Mrs. Watkins was injured, under the terms of the omnibus clause of the policy. Travelers answered the writ of garnishment and denied that it was so indebted, Mrs. Watkins contested that answer, and thus the issue was made as to whether Nunn was an additional insured within the meaning of the omnibus clause. The Circuit Court of Neshoba County found for Mrs. Watkins and entered judgment against the garnishee, Travelers, for the amount of her judgment against Nunn ($12,000). We affirm.
The policy issued by Travelers is a comprehensive liability policy and contains the standard omnibus clause providing that the definition of the insured includes "any person while using an owned automobile or hired automobile or any person or organization responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"
The sole question is whether there was sufficient evidence to justify the finding by the circuit judge, who tried the case without a jury, that Nunn was an additional insured within the meaning of the omnibus clause of the policy.
Some of the facts concerning the circumstances under which the truck was loaned by Riverside to Nunn are stated in Riverside Industries of Philadelphia v. Watkins, supra. However, in that case the issue was whether Riverside was liable to Mrs. Watkins under the doctrine of respondeat superior, and the omnibus clause of the automobile liability insurance policy was not involved. The truck was loaned by the manager of Riverside to David Nunn to take Nunn's calf from a yard at the Riverside plant to Nunn's home. This occurred on Saturday afternoon, and when Nunn asked the manager if the truck should be brought back that afternoon, the manager replied: "No, leave it at home, leave it in the yard there and bring it back Monday morning." Nunn understood the limitations on his use of the truck, and that he was not supposed to use it on Sunday. However, there was no positive, express prohibition against using the truck on Sunday, although it is clear that the permission was limited to taking *632 the calf from Riverside's plant to Nunn's home on Saturday afternoon and returning the truck on Monday morning.
The insurance business is affected with a public interest and is regarded generally as quasi-public in character. The authorities abundantly support this statement. There are numerous statutes enacted by the legislature regulating insurance and in many instances specifying precise clauses that are written into insurance policies by law. Policies insuring automobile owners against public liability is the subject of the Mississippi Motor Vehicle Safety Responsibility Act, Mississippi Code 1942 Annotated section 8285-01 et seq. (1956), and the Uninsured Motor Vehicle Act, Mississippi Code 1942 Annotated section 8285-51 et seq. (Supp. 1966). The latter statute became effective after the accident in this case. The Safety Responsibility Act specifically provides in section 8285-21 that an owner's policy of liability insurance within the meaning of that act "shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured. * * *" The Motor Vehicle Safety Responsibility Act in its various sections is a clear manifestation of the public policy of this state that an automobile liability insurance policy is intended to protect those injured by careless drivers as well as the named insured and permittees.
In 12 Couch, Cyclopedia of Insurance Law section 45:293, at 305-06 (2d ed. 1964), the purposes of an omnibus clause are thus summarized:
The purpose of an omnibus clause is to protect the named insured, the persons within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway.
There is an abundance of authority that the public policy is to protect those injured by careless drivers. See Annot., 5 A.L.R.2d 600 (1949).
The record reflects that after Nunn was involved in the accident with the appellee, a report was made to the Financial Responsibility Bureau of the Mississippi Department of Safety, in which it was stated that the truck Nunn was driving at the time of the accident was covered by the liability policy issued by appellant, Travelers. The record indicates that the fact that this policy existed satisfied the provisions of the Motor Vehicle Safety Responsibility Act and prevented Nunn from losing his driver's license in accordance with the act. Moreover, appellant's policy states that it shall comply with the provisions of the Motor Vehicle Financial Responsibility Law of any state when it is certified as proof of financial responsibility.
The general purpose of the omnibus clause is stated in 7 American Jurisprudence 2d Automobile Insurance section 109, at 420 (1963), as follows:
The purpose of the omnibus clause has generally been recognized as being a liberalizing one. Thus, it has been said that the purpose of the clause is to extend liability insurance coverage to persons other than the owner who had permission to use the car without arbitrary and definite restrictions on such use. Similarly, it has been said that the purpose of the clause is not only to protect a person riding in or legally operating a car with the permission required by the policy, but also to protect any person injured by the operation of the car by giving him a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car.
The same authority in section 112, at 424, states in part that:
It has been stated that the word "permission" has a negative rather than affirmative implication  that is, a permitted act may be one not specifically *633 prohibited as contrasted to an act affirmatively and specifically authorized. The permission need not be express but may be implied. In a statutory omnibus clause, the word "permission," it has been held, should not be limited in meaning to merely legal permission, but should be construed for the benefit of persons injured.
The cases involving the scope of permission and deviation from permitted use are broadly classified into three groups: (1) The strict or conversion rule, stated in 7 American Jurisprudence 2d Automobile Insurance section 120 (1963) is as follows:
According to this rule the actual use of the motor vehicle at the time of the accident must be one contemplated when permission for the use of the automobile was given. In other words, the time at which the bailment was to expire must not have passed; the place at which the automobile is used must be one either specified or contemplated by the parties; and the use made of the automobile at the time of the accident must be one either contemplated or specified.
(2) The liberal or initial-permission rule is as follows:
[I]f the original taking was with the insured's consent, every act subsequent thereto while the bailee is driving the car is held to be with the insured's permission in order to permit a recovery under the omnibus clause. Under this rule a deviation from the permitted use is immaterial, the only essential thing being that permission be given for use in the first instance. Id. § 121, at 439-40.
(3) The moderate or minor deviation rule is stated as follows:
Increasingly, the courts have taken an intermediate position between the two more extreme rules discussed above. This position has become known as the moderate or "minor deviation" rule, and, while adopting the basic requisites of the strict or conversion rule, the courts applying this rule modify the strict rule to the extent that protection will be afforded the bailee if the use made by him is not a gross violation of the terms of the bailment. Under this doctrine, if the use made by an employee or other bailee is not such a gross violation, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause. Id. § 122, at 441.
The weight of authority is to the effect that a minor deviation by a permissive user of a motor vehicle will not effect a limitation upon the permittee's insurance coverage.
The omnibus clause is unique in that it allows the insured to include others as insureds under the policy merely by granting permission to use the vehicle. Most of the cases decided in recent years, since the advent of motor vehicle safety responsibility laws and other like manifestations of public policy, hold that, when the use being made at the time of the accident was not a gross deviation from the time, space and purpose limitations of the permission, although contrary to the permission given, a cancellation of the insurance coverage will not result.
In the present case there were three broad factors as far as the permission was concerned: (1) time  that is, from Saturday afternoon until Monday morning, (2) place  that is, the general area wherein the truck was to be used and (3) use  that is, a use that was personal to Nunn. We believe that the truck was being used within the limitations of these factors.
In Ryan v. Western Pacific Insurance Company, 242 Or. 84, 408 P.2d 84 (1965), the same omnibus clause was involved as in the present case. There the employee knew that it was a written rule that he could not use his employer's vehicle for personal matters, but the employee was so using the vehicle, in a deviation much more extensive than in the instant case, *634 when the accident giving rise to the case occurred. The court stated:
To hold that any deviation from the permission granted ends coverage is not required by the language of the clause and is contrary to another policy of the state. That policy is to protect those injured by careless drivers. * * * If inconsequential deviations are an exception to the strict application of the rule as they appear to be in some states ostensibly adhering to that rule, it is really a restricted application of the "minor deviation rule." Id. at 91, 408 P.2d at 87.
The court noted that its views were probably closer to those expressed by the courts adhering to the minor deviation rule, but said that:
We do not, however, categorically adopt the minor-deviation rule as there are a substantial number of pronouncements of it which are more restrictive than we believe is appropriate. * * *
* * * * * *
Our view of the solution lies between the initial-permission rule and the minor-deviation rule as applied in the last example [Phoenix Indemnity Company v. Anderson, 170 Va. 406, 196 S.E. 629 (1938)]. If the use is the same as that generally authorized  in the case of an employee, personal use as distinguished from business use  and the time and place of use do not represent a gross deviation from that authorized, the driver is a permissive user and covered under the omnibus clause. We realize "gross" is no more definitive than "minor" but it better expresses our thinking of the proper criterion.
These three factors  purpose, time and place  are interrelated just as are speed, control and lookout. If the purpose is closely related to the purpose for which permission was originally granted a greater variance in the time or place of use might not oust the driver from the coverage of the omnibus clause. Similarly, driving for a purpose not so closely related to that for which permission was originally granted might not terminate coverage if the time and place variance is slight. Id. 242 Or. at 91-93, 408 P.2d at 87-88.
In Konrad v. Hartford Accident and Indemnity Company, 11 Ill. App.2d 503, 137 N.E.2d 855 (1956), the Illinois court, applying the initial permission rule, had the following to say on the purpose of the omnibus clause and the weight of authority:
[T]he [initial permission] rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; this is the view followed also in Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin, and probably North Dakota, Oregon, Oklahoma, Florida, Indiana, and West Virginia, and is the weight of authority. Id. at 515, 137 N.E.2d at 861.
We are not willing to adopt the liberal or initial permission rule, nor should we apply the narrow or restricted rule in construing the omnibus clause of an automobile liability insurance policy.
We are of the opinion that the court should take into consideration the fact that vast numbers of automobiles are being driven on the streets and highways of this state by persons who are not the named insureds in the public liability policies covering these vehicles. The omnibus clause should be construed in the light of the manifest public policy of this state as indicated in the Motor Vehicle Safety Responsibility Act and in the later Uninsured Motor Vehicle Act, both of which clearly indicate the legislative policy of protecting the public and providing insurance coverage where persons are insured on the highways of the state.
The recent case of Employers Mutual Casualty Company v. Poe, 191 So.2d 541 *635 (Miss. 1966), aligned this Court with the middle-of-the-road view on this question, when it said that "the wisest rule appears to be the middle ground chosen by the majority of the courts of this country." Id. at 547. In Poe, the employee was loaned an automobile to go a short distance of about two miles to his home after work. He did not go home but drove into another county and engaged in a drunken spree. The permittee "was guilty of a violent deviation from the permission." Ibid. In contrast to the violent deviation in Poe, Nunn in the present case used the vehicle within the time, geographic and purpose limitations of the permission. He did not leave his neighborhood, but used the truck to go to a neighbor's house to get his wife, a use that could reasonably be contemplated by the lender. Nunn's deviation was minor, a thing to be expected by the lender, and it did not, therefore, work a cancellation of the insurance coverage on the truck he was using.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY and INZER, JJ., concur.
SMITH, Justice (dissenting):
With great deference, I respectfully dissent.
I do not question the validity of the abstract statements of law nor the preference of the majority for the so-called "moderate" rule as opposed to the "strict or conversion" rule or the ultra "liberal" rule.
When this Court reviewed the appeal in Riverside Industries of Philadelphia v. Watkins, 195 So.2d 844 (Miss. 1967), the question was whether Nunn was acting within the scope of his employment by Riverside at the time of appellee Watkins' injury. On this appeal, it is whether, at that time, the "actual use" of the vehicle by Nunn was with permission of Riverside, its owner and the named insured in its policy with Travelers. If such "actual use" of the vehicle by Nunn was not with Riverside's permission, Nunn did not come within the classification of an "unnamed insured" as defined in the omnibus clause of the policy.
Therefore, the case turns upon the single question of whether Nunn's use of the truck upon the occasion of appellee's injury was with Riverside's permission. I cannot rid myself of the conviction that it was not.
The rights of appellee, as Nunn's judgment creditor, against Travelers are necessarily limited and measured by Nunn's own right against that company to demand protection, under Riverside's liability policy, as an "unnamed" insured. Appellee's rights against Travelers can be no greater than Nunn's rights. In order that Nunn should be covered and enjoy the protection of the policy as an "unnamed" insured, as defined in the omnibus clause, permission of Riverside for the actual use of the truck upon the occasion in question was indispensable. Stated differently, could Nunn, under the circumstances in evidence, have compelled Travelers to discharge the judgment against him which appellee had recovered?
The persons with knowledge of the subject who testified, including Nunn himself, stated that he did not have Riverside's permission for such use of the vehicle upon the occasion of the collision which resulted in appellee Watkins' injury. No one testified to the contrary.
The proof was that Nunn had obtained the truck on Saturday from Riverside's manager, with the understanding that he was to use it for the specific purpose of transporting a calf, which belonged to him, to his home for butchering. He was granted the use of the truck for that single purpose with the understanding that it was not to be used but was to be left parked in his yard over Sunday and returned to Riverside Monday morning when he came to work. This is undisputed.
*636 Notwithstanding that Nunn understood that he was not to use the truck on Sunday, he took it out of his yard on Sunday and was on a personal mission of his own (he was going to pick up his wife) when the collision occurred in which appellee was injured.
At the conclusion of the evidence for plaintiff-appellee, a motion to exclude and to find for Travelers was overruled by the court, as was a motion for judgment at the close of the case. A judgment was then entered against Travelers, in favor of appellee, for $12,000, the amount of her judgment recovered against Nunn in the former litigation.
Of other "evidence" in the record, which appellee relies upon as being sufficient to support her judgment in this case, it is necessary to notice only two items.
The competency, as well as the probative value of this evidence, must be examined in the light of the relationship between the parties.
The attorney for appellee took the stand and testified. He said that, after he informed Travelers that he represented appellee, an adjuster called on him for the purpose of discussing a possible settlement of the claim. In this connection, he introduced letters received by him from the adjuster. However, not one of these letters referred to Nunn. On this visit to the attorney's office, in the course of discussing a possible compromise of the claim, or, as the adjuster put it, while he was there to try to "buy our peace," the attorney said the adjuster remarked that Travelers "afforded the liability coverage on the Riverside Industries, Inc. truck that was involved in the accident * * * and that they afforded coverage to David Nunn, the driver of the vehicle; that he was there to adjust the loss in favor of David Nunn and Riverside Industries of Philadelphia, Inc. and that he would go back to Jackson and write me the amount that the case was worth. * * *"
It is undisputed that no policy had ever been issued to Nunn by Travelers. Also, such a statement was inconsistent with the testimony of the adjuster as well as with the undisputed circumstances of Nunn's use of the truck. But if it is assumed that these circumstances were known to the adjuster, this remark, if correctly recalled by the attorney, that Nunn was "afforded coverage" made in the course of an effort to compromise a disputed claim, was no more than a conclusion on his part and was wholly insufficient to impose liability under the insurance contract where none, in fact, existed. Neither is there any element of estoppel involved as appellee was not induced by the statement to act or to refrain from acting to her detriment. Travelers defended the suit for Nunn, but did so under a written non-waiver or reservation of rights agreement. Moreover, I think it conclusively appears from the attorney's testimony itself, as well as from the letters introduced by him, that the adjuster was doing no more than trying to compromise appellee's claim with her attorney or, as he phrased it, trying to "buy our peace."
The only other item of evidence said to support the theory that Nunn had permission to use the truck that requires discussion, was testimony to the effect that Nunn had said, after the collision, that he was on his way to return the truck at the time. All of the evidence, including Nunn's sworn testimony, was that this had not been the case. If this had been true, nevertheless, it would have been in violation of the instructions given him by Riverside to leave the truck in his yard and not to bring it back on Sunday when the plant was closed. But it was not competent against Travelers. As to Travelers, this extrajudicial statement attributed to Nunn, was not only hearsay, but, for the purpose offered, that is, to establish Nunn an unnamed insured under the omnibus clause of Riverside's policy contract with Travelers, it was not in the nature of an admission *637 against interest, but was actually a self-serving declaration by Nunn.
All of the competent evidence having any probative value upon the question of whether Nunn's actual use of the truck upon the occasion of appellee's injury was with Riverside's permission was that it was not. In my opinion there is no evidence in the record capable of supporting the contrary view.
I am mindful of the salutary public policy which finds expression in the Mississippi Motor Vehicle Safety Responsibility Act. This legislation is designed to encourage and, in certain circumstances, to require that those who operate motor vehicles on the public highways shall, through liability insurance or otherwise, establish their ability to respond in damages to persons whom they may injure.
Under the facts of this case, however, I have been unable to equate what was done here with a permissive use of the vehicle. To do so, it seems to me, would be to adopt the view that a person having access to the vehicle of another, regardless of any conceivable express prohibition of, or restriction or limitation upon its use, or of the withdrawal of permission formerly granted prior to the questioned use, would be deemed, nevertheless, to use it with the owner's permission no matter how this might be opposed to the actual fact. Nothing is more repugnant to the idea of permissive use than a use which contravenes the well understood instructions of the owner under which possession of the vehicle was obtained. They represent two concepts which are antagonistic, incapable of being reconciled and which cannot exist concurrently. The use of the vehicle by Nunn in the case here differs in none of its material aspects from the use of the vehicle of another by any person having access to it but to whom permission to use had not been granted but on the contrary has been withheld. The terms and conditions expressed in the insurance contract are unambiguous and may not be disregarded as being wholly without meaning or significance. Employers Mut. Cas. Co. v. Poe, 191 So.2d 541 (Miss. 1966).
Of course, it is possible to envision a case where a motor vehicle is entrusted by the owner to another who afterwards employs it for an unanticipated use, but a use not counter to or beyond the purview of the owner's permission. In such a case, in the light of a general public policy indicated through the enactment of the Mississippi Motor Vehicle Safety Responsibility Act, an implication that the use was permissive might be justified by circumstances established by evidence.
I agree with the majority that the legislature has power by statute to require, in the public interest, that policies of insurance be construed to contain provisions binding upon the insurer, whether such provisions are actually written into the policies or not. This has been done in many cases. Moreover, I agree that where the legislature has expressed itself upon a subject by the enactment of a statute, the statute must be considered an expression of the public policy of the state upon the subject. But I am unable to see that there has been any such legislative expression of policy capable of supporting the conclusion of the majority in this case.
Mississippi Code 1942 Annotated section 8285-06 (Supp. 1966) of the Act provides a number of exceptions to the requirements of the Act, one of which is in the following language:

The requirements as to security and suspension for failure to deposit security in Section 5 [§ 8285-05], shall not apply: * * * 3. to the owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, express or implied * * *. (emphasis added).
The above section clearly is intended to exclude cases where the vehicle is being "operated without his (the owner's) permission, *638 express or implied * * *." I cannot agree that this statute, in the light of the undisputed evidence, had the effect of extending coverage to Nunn. It seems to me that its manifest purpose is to restrict rather than to enlarge coverage. It declares, as a matter of public policy, that no coverage shall be afforded where the use of the vehicle is without permission of the owner, express or implied.
There was no misunderstanding either by Nunn or Riverside as to any of the "three broad factors" upon the basis of which the majority reached its conclusion that Nunn had permission. These factors are said to be time, place and use. There is no dispute that both Nunn and Riverside understood that Nunn's permission was to use the truck (1) on Saturday afternoon, for a single designated purpose, and that he was not to use it on Sunday, the day on which the accident occurred (2) he was to keep it parked in his yard over Sunday, and was not to use it on that day (in the "general area" or anywhere else), and (3) he was to use it no further until he returned to work on Monday morning.
The restrictions imposed by Riverside on Nunn's use of the truck clearly were for the purpose of keeping him out of the truck and off the streets over the weekend. No other reasonable construction would appear to be possible. I am unable to see that it is material, in this situation, that the accident occurred "within the general area" or over the weekend or when Nunn was on another "personal" mission of his own, since his use of the truck, in each of these respects, violated the terms under which he had it in his possession.
There is no suggestion that Nunn's use of the truck "at the time of the accident" was with the "express" permission of Riverside. Upon that question, the negative was established, excluding the affirmative. Expressum facit cessare tacitum.
This maxim has been held to support the principle that an express declaration of purpose precludes the implication of a different purpose. Slegel v. Herbine, 148 Pa. 236, 23 A. 996, 15 L.R.A. 547 (1892).
Intent is of the essence of permission, and to permit contemplates a conscious consenting. This need not be expressed in words, but may be inferred where such an inference is warranted by the circumstances in evidence. It should not be implied, however, where its existence is counter to the actual facts which were fully developed and established by the evidence. Unlike Lord Byron's maiden, who, while "whispering I will ne'er consent, consented," Riverside (appellant's assured) never did consent.
A situation may exist where a finding of tacit consent would be warranted or in which permission to use may be implicit in the circumstances. But here the terms of the mutually well understood agreement were explicit and fully developed by undisputed evidence and show not only an actual absence of permission, but limitations or restrictions which precluded the questioned use. Under these circumstances, no implication of a contrary intention can be made. As presumptions vanish in the face of proof, so must an implication yield to evidentually established inconsistent facts.
In my opinion, the judgment appealed from should have been reversed and judgment entered here for appellant.
JONES, PATTERSON and ROBERTSON, JJ., join in this dissent.