216 So.2d 535 (1968)
INTERNATIONAL SERVICE INSURANCE COMPANY
v.
G.C. BALLARD, Jr. and Wade H. Lagrone.
No. 45103.
Supreme Court of Mississippi.
December 9, 1968.
*536 Cary E. Bufkin, Satterfield, Shell, Williams & Buford, Jackson, for appellant.
Mitchell, McNutt & Bush, Tupelo, for appellees.
RODGERS, Justice:
This case came to this Court from a final judgment of the Circuit Court of Lee County, Mississippi, in favor of Wade H. Lagrone in a garnishment proceeding against International Service Insurance Company. The garnishment proceeding was based on a judgment in favor of G.C. Ballard, Jr. against Paula Helms, the minor daughter of Kelly Helms.
Kelly Helms owned a 1964 Buick four door LeSabre automobile, which was used for family purposes. It was insured by the appellant, International Service Insurance Company, of Fort Worth, Texas. The automobile was wrecked while parked on the street on September 19, 1964. The following morning Kelly Helms telephoned Mr. Bobby Davis who was the sales manager of George Ruff Buick & Oldsmobile Company, and advised him that his automobile had been wrecked. He requested Mr. Davis to lend him an automobile until his Buick could be repaired. Davis turned over to Mr. Helms a 1964 Oldsmobile. Davis put no restrictions on the use of the Oldsmobile, and he had authority to act for the owner. He knew that Mr. Helms had a family, but did not know any of the particulars about Helms' family.
The next day, September 21, 1964, George Ruff was informed that Davis had loaned the Oldsmobile to Helms, and he made no objections; however, he expected to get the Oldsmobile back and to let Mr. Helms have another automobile until his could be repaired.
During the week of September 21, 1964, Mr. Kelly Helms traded his wrecked automobile to George Ruff Buick & Oldsmobile Company for a new automobile, to be delivered at some future date. The Helms' automobile was in such a wrecked condition that George Ruff Buick & Oldsmobile Company (hereafter called Automobile Company sold it as salvage to Big Four Motors on September 28, 1964.
On Monday, September 28, 1964, eight days after Davis had loaned Kelly Helms the 1964 Oldsmobile, Helms instructed his daughter, Paula Helms, to drive downtown to get another daughter who was at work. Paula drove the automobile south on Gloster Street. The street was wet from a light rain, and because of oil deposited on the street by passing trucks, the street was slick. An automobile driven by G.C. Ballard, Jr. was proceeding along the street immediately ahead of Paula Helms. Ballard brought his automobile to a stop at the intersection of Allen Street. Paula *537 Helms put on her brakes, but because of the slick condition of the street she was unable to stop the Oldsmobile before it struck the rear end of the automobile driven by Mr. Ballard. Mr. Ballard brought suit against Paula Helms. Before the case came to trial, the attorneys for Ballard and the attorneys for Paula Helms reached an understanding and a tentative settlement; however, evidence was introduced and the jury was informed that the parties had reached a tentative settlement, and attorneys for plaintiff and defendant suggested to the jury that it return a verdict of $5,500, which the jury did. After judgment had been entered, and a motion for a new trial overruled, Wade H. Lagrone, who was an attorney in the law firm of Mitchell, McNutt and Bush, purchased the Ballard judgment with money borrowed from Home Indemnity Company of New York, with the understanding that the money would be repaid out of funds obtained from International Service Insurance Company, the appellant here.
The testimony shows that Home Indemnity Company, hereafter called Home, had employed the law firm of Mitchell, McNutt and Bush to defend the suit against Paula Helms. Home was involved in the Ballard claim, because it was obligated under the terms of an insurance policy issued to George Ruff, doing business as George Ruff Buick & Oldsmobile Company. This policy covered any person who used, with permission of the named insured, any automobile, provided such person's actual operation was within the scope of such permission. Home gave notice to International Service Insurance Company, hereafter called International, to defend the suit upon the theory that the insurance policy written by International was primarily liable since the International policy issued to Kelly Helms obligated International to pay on behalf of Kelly Helms, and any other insured, including members of his family, all legal obligations in the way of damages caused by an accident arising out of the use of the "covered" automobile up to the policy limits. The policy provided coverage to any insured who operated any vehicle when the insured was not covered by other insurance. The policy also covered any insured while operating a "temporary substitute" automobile. "Substitute automobile" was defined as: "* * * any automobile * * * not owned by the named insured, while temporarily used with the permission of the owner is a substitute for the owned automobile * * * when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction * * *."
International declined to defend the Ballard suit, and after the final judgment had been assigned to Wade H. Lagrone, he filed a written suggestion with the Circuit Court suggesting that garnishment be served upon International as being indebted to the insured under the terms of its policy issued to Kelly Helms. The garnishment was duly issued, and the garnishee filed its answer in which it denied that it was obligated to pay the judgment under the terms of its policy issued to Kelly Helms, for the following reasons:
(1) There was no legal judgment entered in favor of G.C. Ballard, Jr., the assignor.
(2) The legal requirements to obtain a garnishment had not been satisfied.
(3) G.C. Ballard had been paid and the assignee was not an interested party.
(4) The matter was pending in the federal district court.
The assignee, Wade H. Lagrone, contested the answer upon the ground that garnishee was liable to Kelly Helms, but that Home was not liable because of the fact that the loan of the Oldsmobile to Kelly Helms did not work to give "permission" of the owner, George Ruff, for Kelly Helms to permit his minor daughter to operate the automobile since she was too young to have a driver's license. She lacked two weeks being fifteen years of age, and it was illegal for her to drive the automobile.
Upon the trial without a jury, the Circuit Judge entered a final judgment in favor *538 of Wade H. Lagrone on the issue raised by the writ of garnishment. An appeal has been brought to this Court from that judgment by International.
The appellant contends on appeal here that: (1) There was no valid judgment against Paula Helms on which a writ of garnishment could be issued, because, it is said, the judgment was a voluntary settlement by Home; Home acted as a volunteer and cannot recover in an action for indemnity; (2) International is not liable, because the automobile belonging to Kelly Helms had been sold at the time of the accident and the sale eliminated "coverage" since the automobile could not have been a "temporary substitute" for the "owned automobile," when in fact the insured, Kelly Helms, owned no automobile at the time of the accident, and there could not have been a temporary substitute for an automobile no longer owned; and (3) Home is liable because the Oldsmobile driven by Paula Helms was driven with permission of Bobby Davis for and on behalf of George Ruff, the insured, at the time of the accident; that if International is liable, Home is primarily liable, and International is liable only for the excess judgment over and above the obligation of Home. Therefore, since the amount of the judgment is within the amount obligated under the Home policy, International is not liable.
In view of the decision we have reached in this case, we find it necessary to discuss only the third and final point argued by appellant, International. The real issue in this case is: Was Paula Helms driving the automobile, loaned to her father, with permission of the insured owner, George Ruff? If she were, Home is primarily liable. The Home policy provides under Part I, Persons Insured, (3)(a) and (b), the following:
"(3) With respect to the Automobile Hazard:
(a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.
(b) any person while using an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."
It is conceded by the appellees that George Ruff, through his agent, gave permission to Kelly Helms to use the automobile, and that if the owner's permission had been given to Paula Helms to use the automobile, the Home policy would have afforded Paula protection. International contends on the other hand that since the use of the automobile was unrestricted, Helms could use the automobile by directing one of his daughters to go get another daughter; that such use was within the permission given him to use the Oldsmobile. Appellee contends that the permission given Kelly Helms to use the Oldsmobile did not carry with it by implication the permission for Helms to allow his minor daughter to operate the vehicle, because, it is said, it was a violation of law for Paula Helms to operate the vehicle without a license and the consent of the automobile company thereto would not be implied.
Appellees cite Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961), as authority for the proposition that an insured owner's grant of a party to an original permittee to allow an unlicensed driver to use the automobile in violation of law will not be implied. In the Rogillio case the facts shown in the opinion reveal that the insured owner permitted his seventeen year old son to use the Chevrolet automobile *539 described in the insurance policy to carry a young lady to a high school New Year's dance. The son went by a friend's house, and there it was decided that they would go after their "dates" in a car belonging to the father of his friend. Young Oliver, the insured's son, left his father's automobile at his friend's home in front of the garage. Michael, the fifteen year old brother of young Oliver's friend, asked Oliver if he did not want to leave the car keys. Oliver gave him the keys and said that the car might have to be moved. Michael later drove the insured automobile into the city and was involved in an accident which resulted in the litigation. The issue in that case was whether or not young Oliver's acts in leaving the keys constituted the delegation of another as a permittee so as to place responsibility for the damages upon the automobile owner. The court held that his acts did not.
We are of the opinion that the facts in Rogillio are not applicable here. There was no permission granted to Michael to use the Chevrolet.
The appellees have cited other cases where the use of the owner's automobile was limited or restricted to a certain trip of a given purpose. We are of the opinion that the cases with reference to the restricted use of an automobile are not applicable to the case here before the Court.
We have two cases in this state on the legal question of a restricted use of an automobile borrowed from an owner, where the automobile was in an accident and the question as to the liability of the owner's insurance policy was involved. These cases are Employers Mutual Casualty Company v. Poe, 191 So.2d 541 (Miss. 1966) and Travelers Indemnity Company v. Watkins, 209 So.2d 630 (Miss. 1968).
In Watkins we pointed out: "The weight of authority is to the effect that a minor deviation by a permissive user of a motor vehicle will not effect a limitation upon the permittee's insurance coverage." This is true although in Watkins the owner of the automobile had restricted the use of the automobile, and the borrower had used the automobile in violation of the restriction. A careful study of the authorities presented in the briefs has led us to the conclusion that the majority of the authorities are adverse to the contention of the appellee that Kelly Helms was not using the Oldsmobile with permission of George Ruff when he sent his minor daughter to get her sister, because, (as appellees contend), there was no express permission for Paula Helms to use the automobile, and there could be no implied permission since Paula was not old enough to obtain a driver's license and permission would not be implied to violate the law.
It is pointed out in 6 Blashfield, Cyclopedia of Automobile Law and Practice, Part 1, Insurance § 3947 (1945), that the mere fact that the operator of an insured automobile was an unlicensed minor does not relieve the policy of liability. It states:
"The fact that the driver is unlicensed, or has had his license suspended, and consequently cannot lawfully drive upon the highway, does not prevent an automobile owner from giving such a person permission or consent to use his automobile with such effect as to make the liability insurer liable; it not being fatal to the giving of permission that such person's operation of the automobile is in violation of law or essential to a valid permission, as contemplated by the policy, that the driving be legal."
In the case of Odden v. Union Indemnity Company, 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363 (1930), cited by the appellant, the facts show that one W.L. Grill, named insured and owner of an automobile involved, turned his automobile over to one H.E. Hickey (first permittee) to use and operate as his own for business and pleasure and consented to the operation of said automobile by Hickey personally and by others. Hickey permitted one Myron Bullock, an unlicensed driver, to use the automobile, from which use an accident occurred and *540 the present action arose. The suit was against both the first permittee and the second permittee. The court held that the policy afforded coverage to both permittees. The permission in the Odden case was for unrestricted use as in the present case.
In the case of Allstate Insurance Company v. Fidelity & Casualty Company, 73 N.J. Super. 407, 180 A.2d 168 (App.Div. 1962), certification denied, 37 N.J. 522, 181 A.2d 783 (1962), an insured automobile owner let his minor son use his automobile. His son let a minor friend drive, and later instructed another minor, Marsch, how to operate a standard shift. Marsch undertook to do as he was instructed, the automobile started to roll and went downhill, and Marsch lost control and struck a pedestrian. In that case the court said:
"* * * the unrestricted permission to use the car encompassed the use to which Peter, Jr. put it when he undertook to instruct Marsch (15 year old unlicensed driver) in its operation. While the operation by Marsch was contra the instructions of the named insured, the use was not, and since it is permitted use which gives rise to coverage, Marsch must be regarded as an additional insured under the Fidelity policy."
In the case of Wood v. Kok, 58 Wash.2d 12, 360 P.2d 576 (1961), a young man, Ronald Kok, eighteen years of age, sought to purchase an automobile from Ruth M. Fleenor. He asked her permission to drive the automobile for the purpose of trying it out, in contemplation of the trade. The court said:
"On April 7, 1957, Ronald drove the Plymouth to Montesano, Washington. While he was there, he permitted a friend, Sandra Miller, who was fourteen years old and who did not have a vehicle operator's license, to drive the car. While Sandra was driving and he was sitting next to her, the accident occurred causing the injuries for which Oscar and Bessie Wood were granted the judgment against him. Sandra was a stranger to Ruth Fleenor, who did not know Ronald had permitted her to drive the Plymouth until after the accident occurred.
"The omnibus clause in the insurance policy issued by the Farmers Insurance Exchange to Mrs. Fleenor, under which the trial court held it was liable, provided:
`(b) with respect to the insurance afforded by this policy under Coverages A and B, the unqualified word "insured" includes * * * (2) with respect to the described automobile or a substitute automobile, any other person or organization legally responsible for its use, provided the actual use of the automobile is by the named insured or with his permission * * *.'"
The court cited the Odden v. Union Indemnity Company case, supra, as authority for its decision, and said:
"The reasoning of the Odden case is sound. The object of automobile liability insurance coverage would be defeated if an insured was not afforded protection on occasions of his improvident or negligent conduct in the use of his automobile. As in the Odden case, Ronald Kok was entitled to the same protection under the omnibus clause of the policy as Mrs. Fleenor would have been entitled to had she permitted an unlicensed driver to take the wheel in her use of the automobile."
It is pointed out by the textwriter in 6 Blashfield, Cyclopedia of Automobile Law and Practice, Part I, Insurance § 3947, at 635-36 (1945), that:
"But while, as stated above, the fact that the driver is unlicensed does not prevent the insurer from being liable in the absence of any express exclusion of coverage in the policy, many policies provide that the insurer shall not be liable for losses or damages caused while the automobile is being driven by any person violating any law or ordinance as to a driving license. Such a provision is not contrary to public policy, unreasonable or void, and under such a provision *541 there can be no recovery when the accident occurred while the vehicle was being driven by an unlicensed driver, though the breach of such provision was not a proximate cause of the accident, and though the law requiring a license became effective after the policy was issued."
The appellee, Wade H. Lagrone, contends however that "it is axiomatic that one may presume that another will act lawfully." This axiom, however, does not prevent an insurance company from insuring the negligence of a permittee in using an automobile by having his unlicensed minor daughter to drive it.
We are of the opinion, therefore, that the unrestricted permission of the sales manager of George Ruff Buick & Oldsmobile Company given to Kelly Helms included the permission to use the automobile to send one daughter for another daughter, although the daughter he sent to drive the automobile did not have a license to drive.
We are also of the opinion that both of the insurance policies involved in this lawsuit are obligated, under the facts here shown, for the damages resulting from the injury caused by the permissive use of the automobile as well as the temporary use of the Oldsmobile as a substitute for the Helms' Buick, because the Buick broke down or was destroyed.
As a general rule of law, where a lender of an automobile has an insurance policy which obligates the company to protect the borrower of the owner's automobile and the borrower also has an insurance policy which is designed to protect him against liability while using a "substitute" automobile, the lender's policy is considered to have the primary obligation and the borrower's policy is secondary and is liable only for any excess damages accruing over and above the obligation of the lender's policy. Employers' Liability Assurance Corp., Ltd. v. Fireman's Fund Ins. Group, 104 U.S.App.D.C. 350, 262 F.2d 239 (1958); Allstate Ins. Co. v. Urban, 15 Ill. App.2d 386, 146 N.E.2d 387 (1957); Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co., 157 Ohio St. 385, 105 N.E.2d 568 (1952).
The insurance policy issued by the appellant has a paragraph written in the policy with reference to other insurance as follows:
"OTHER INSURANCE. If the insured has other insurance * * * the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
Without defining the meaning of the first phrase, it is obvious to us that the insurer, International, intended, with respect to the temporary substitute automobile, that the policy should be considered as excessive insurance only.
We are constrained to hold, therefore, that since the insurance policy issued by Home Indemnity Company of New York is primarily liable, and since the damages which accrued as a result of the accident are less than the obligation set out in the Home policy, the appellant, International Service Insurance Company, is not liable for the judgment obtained against Paula Helms. The judgment of the Circuit Court of Lee County on the writ of garnishment issued at the request of the assignee of the judgment in favor of Wade H. Lagrone for $6,325 is hereby reversed, and judgment is entered here dismissing the writ of garnishment and rendering judgment in favor of the appellant, with costs.
Reversed, garnishment dismissed, and judgment rendered in favor of appellant, International Service Insurance Company.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.