253 So.2d 388 (1971)
UNITED STATES FIDELITY & GUARANTY CO.
v.
Mrs. Y.C. STAFFORD.
No. 46331.
Supreme Court of Mississippi.
October 11, 1971.
Threadgill & Smith, Gary L. Geeslin, Columbus, Harvey S. Buck, West Point, for appellant.
Tubb & Stevens, West Point, Burgin, Gholson, Hicks & Nichols, Columbus, for appellee.
BRADY, Justice.
This is an appeal from the Circuit Court of Clay County, Mississippi, wherein the jury found the appellant liable under its insurance contract to appellee in the amount of $5,245.82. From that judgment this appeal *389 is prosecuted by the defendant below, United States Fidelity & Guaranty Company. A concise statement of the facts follows.
On January 10, 1969, a 1962 Chevrolet Impala automobile, legally owned and registered to Roy Plunkett, an adult resident of Clay County, Mississippi, was being driven by one C.B. Thompson, Jr., eighteen years of age. Roy Plunkett's son, Wayne, aged sixteen years, was seated on the right front seat of the automobile when the car struck and killed John Wayne Foreman, seventeen years of age, on an abandoned air strip in Columbus, Mississippi, while drag racing with another automobile owned by Mike Garnett. The race took place in Lowndes County, Mississippi, just southeast of Columbus.
The testimony reveals that on January 10, 1969, the night of the accident, Wayne Plunkett, the son of Mr. Roy Plunkett, along with C.B. Thompson, Jr., had first raced the automobile on the Barton Ferry Road near West Point. They raced the cars only once there and then left for the Columbus "drag strip." The "drag strip" was not in operation due to the fact that it was approximately 10:00 o'clock at night. The boys took turns; Wayne Plunkett raced twice and then C.B. Thompson, Jr. also raced the Plunkett automobile twice. It was on his second race that the flagman, John Wayne Foreman, was struck and killed.
The record reveals that the insured, Mr. Roy Plunkett, also owned, in addition to the 1962 Chevrolet Impala, a 1966 Chevrolet. The record reveals that the 1962 twodoor hardtop Impala super sport automobile had a 300 horsepower, 327 cubic inch Chevrolet engine and had a racing cam and solid lifters, and had a four speed Hertz shift, as well as a four barrel AFB carburetor. The record verifies that although Mr. Plunkett denied knowledge of the powerful motor and the Impala's racing parts, nevertheless he testified that he had the four speed shift installed because three other speed shifts had been torn up. Other changes that had been made to the Plunkett automobile to make it a racing car were the mag wheels which had been purchased, and Roy Plunkett admitted he helped Wayne purchase the mag speed wheels, and place them on the automobile. The record clearly establishes that the car could run very fast and had quick acceleration and that it was capable of speeds in excess of those on the speedometer. Wayne admitted that his speedometer registered only 120 MPH and he could not say whether it could run 130 to 135 MPH.
As a result of the accident in which John Wayne Foreman was struck and killed, the Circuit Court of Lowndes County, Mississippi, entered a directed verdict in favor of the appellee against C.B. Thompson, Jr., and the jury returned a verdict in the sum of $5,000, for which a judgment was entered. An execution on the judgment against Thompson would be unremunerative. Now, Mrs. Stafford sues the appellant insurer of the Plunkett car.
The appellant's family automobile liability insurance policy which Roy Plunkett obtained on the 1962 Chevrolet Impala was in full force and effect on the date of this accident. However, the appellant denied coverage and asserted that the operation of the vehicle at the time of the death of John Wayne Foreman was under the control of C.B. Thompson, Jr. who was operating it without the express or implied permission of the legal owner, Roy Plunkett, and therefore the appellant had no coverage responsibility to the Stafford judgment.
This is a brief statement of the facts of the case. Other facts will be added that are needed when dealing with appellant's assignment of errors.
The appellant assigned nine errors which it claims were committed by the trial court. We will not deal with them necessarily in the sequence in which appellant has assigned them but will consider them in the light of their importance as urged. The *390 most significant and important assignment of error is that the lower court erred in failing to direct a verdict for appellant and further erred in overruling appellant's motion for a judgment notwithstanding the verdict. These errors are predicated basically upon the contention that C.B. Thompson, Jr. was not driving with the express permission of the named insured; that Thompson was not insured, within the meaning of the policy issued by the appellant, United States Fidelity & Guaranty Company, hereinafter designated as U.S.F. & G. or appellant; and that the protection afforded by said policy was not available to Thompson in any action for bodily injuries arising out of his operation of the vehicle of the named insured.
The fundamental issue is simply who precisely is covered or protected from liability under Roy Plunkett's family automobile liability insurance policy number CAF 1047972 as issued by U.S.F. & G. The policy covered the period from January 23, 1968 to January 23, 1969, during which time the accidental death occurred. This issue in turn requires an interpretation of the policy's standard "omnibus clause." The standard "omnibus clause" in the insurance policy issued to Roy Plunkett contains the following provision:
PERSONS INSURED
The following are insureds under Part I:
(a) With respect to the owned automobile,
(1) the Named Insured and any resident of the same household, (2) any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *
Appellant vigorously and repeatedly urges that the policy constitutes the contractual obligations of the parties and this Court should not nor should any court expatiate these mutual contractual duties as set out in the policy. However, in 1956 the Legislature of Mississippi enacted the Mississippi Motor Vehicle Safety Responsibility Act, which has application here, and which must be considered. Mississippi Code 1942 Annotated section 8285-21 (1956) provides in part as follows:
(a) A "motor vehicle liability policy" as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance * * *.
(b) Such owner's policy of liability insurance:
1. shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and
2. shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maitntenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows * * *. (Italics added.)
* * * * * *
(d) Such motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this Act as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this Act.
As can be seen by comparing the statutory provision relating to the coverage, there *391 is a difference in exactly who is covered by the policy. The policy designates the persons insured as "Any other person using such automobile with the permission of the named insured provided his acts of operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *" (Italics added.) It should be noted that the Mississippi statute requires only the following: "(S)hall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured * * *." (Italics added.)
It is the law in this state as it is in most jurisdictions that if there is any difference between an insurance policy as written by the company and the requirements by statute of the state, the requirements of the statute are incorporated into and become a part of the policy of the insurance company.
In Travelers Indemnity Company v. Watkins, 209 So.2d 630 (Miss. 1968), rehearing denied May 13, 1968, this Court, speaking through Chief Justice Ethridge, stated:
The insurance business is affected with a public interest and is regarded generally as quasi-public in character. The authorities abundantly support this statement. There are numerous statutes enacted by the legislature regulating insurance and in many instances specifying precise clauses that are written into insurance policies by law. Policies insuring automobile owners against public liability is the subject of the Mississippi Motor Vehicle Safety Responsibility Act, Mississippi Code 1942 Annotated section 8285-01 et seq. (1956), and the Uninsured Motor Vehicle Act, Mississippi Code 1942 Annotated section 8285-51 et seq. (Supp. 1966). The latter statute became effective after the accident in this case. The Safety Responsibility Act specifically provides in section 8285-21 that an owner's policy of liability insurance within the meaning of that act "shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured. * * *" The Motor Vehicle Safety Responsibility Act in its various sections is a clear manifestation of the public policy of this state that an automobile liability insurance policy is intended to protect those injured by careless drivers as well as the named insured and permittees. (209 So.2d at 632.)
* * * * * *
The omnibus clause is unique in that it allows the insured to include others as insureds under the policy merely by granting permission to use the vehicle. Most of the cases decided in recent years, since the advent of motor vehicle safety responsibility laws and other like manifestations of public policy, hold that, when the use being made at the time of the accident was not a gross deviation from the time, space and purpose limitations of the permission, although contrary to the permission given, a cancellation of the insurance coverage will not result. (209 So.2d at 633.)
* * * * * *
We are not willing to adopt the liberal or initial permission rule, nor should we apply the narrow or restricted rule in construing the omnibus clause of an automobile liability insurance policy.
We are of the opinion that the court should take into consideration the fact that vast numbers of automobiles are being driven on the streets and highways of this state by persons who are not the named insureds in the public liability policies covering these vehicles. The omnibus clause should be construed in the light of the manifest public policy of this state as indicated in the Motor Vehicle Safety Responsibility Act and in the later Uninsured Motor Vehicle Act, both of which clearly indicate the legislative *392 policy of protecting the public and providing insurance coverage where persons are insured on the highways of the state. (209 So.2d at 634.)
Appellant contends that the omnibus clause did not cover the automobile while it was being driven by C.B. Thompson, Jr., because he had neither the express nor implied consent of the insured, Mr. Roy Plunkett. However, there is ample testimony to substantiate the conclusion that C.B. Thompson, Jr., was driving with the implied consent of the insured, Roy Plunkett. There is no doubt that Wayne Plunkett gave his express consent to Thompson to race the car. The record clearly establishes the fact that on numerous occasions the automobile had been used by other individuals solely on the permission of Wayne Plunkett. There is credible testimony to the fact that Mr. Roy Plunkett was present at times when the automobile was used without his specific or express permission being granted and that he wholly failed to make any objection. Other facts showing that Wayne Plunkett had full authority and control over the use of the automobile are that he made, and was helped by his mother to make, the payments on the car at Keller Motor Company; that he used the car to go to school and that it was left on the school parking lot all day; that he used it at night for "dates;" and that he would use the car to go back and forth to work and keep it with him while he was at work. The record further shows that he purchased the mag wheels that went on the car, although his father testified that he helped him buy the wheels. Wayne had and kept his own set of car keys.
In National Farmers Union Property & Casualty Company v. State Farm Mutual Auto Insurance Company, 277 F. Supp. 542 (Mont. 1967), the Court, after dealing with facts somewhat similar to the facts in this case, quoted with approval from 7 Am. Jur. Automobile Insurance section 117 (1963) as follows:
The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use of the first permittee" and that such "use" is within the coverage of the omnibus clause.
The court went on and stated:
It is recognized that as a general rule the use of an automobile by a third person is not protected where the owner has expressly forbidden it. Where, however, the first permittee has "broad and unfettered domination" over the insured automobile, under certain circumstances permission of the insured may be implied. In particular, this is true where the operation by the second permittee serves some purpose of the first permittee. (277 F. Supp. at 547.)
There is ample testimony in the record to support the finding of the jury that Wayne Plunkett had on numerous occasions allowed other individuals to drive the 1962 Chevrolet Impala; that his father, Mr. Roy Plunkett knew, or should have known, this to be true, yet he at no time forebade or voiced any objections to these persons using the automobile with only the permission of his son, Wayne Plunkett. To the contrary, Roy Plunkett denied such knowledge and stoutly maintained that he sternly ordered Wayne not to race or let anyone drive the car. Thus there were sharp issues of fact raised for determination by the jury. The evidence is sufficient to justify the verdict of the jury in finding that the insured, Roy Plunkett, impliedly gave permission to C.B. Thompson, Jr. to drive and use the 1962 Chevrolet Impala by not restricting its use solely to Wayne Plunkett.
*393 As was pointed out in Travelers Indemnity Company v. Watkins, supra, there is an abundance of authority that the public policy is to protect those injured by careless drivers and that the purpose of the omnibus clause is to protect the named insured, the person within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway.
Following the rule as stated in 7 Am.Jur. Automobile Insurance section 117 (1963), C.B. Thompson, Jr. was driving the automobile with the implied permission of the insured, Roy Plunkett, at the time of the accident with (1) the original permittee, Wayne Plunkett, riding in the right front seat of the automobile at the time of the accident; and (2) that C.B. Thompson, Jr. was driving the vehicle and serving the benefit and purpose of Wayne Plunkett, the original permittee, in that the purpose of the original permittee was to see that his automobile could outrace and outrun that of Mike Garnett. Wayne was using his car, being driven by Thompson, to win the drag race with the Garnett car and prove that his car was the fastest. This was the only reason, purpose or use of the car at the time of the accident.
Appellant's contention is that the interrogation of Raye Sanders by appellee regarding his alleged investigation was highly prejudicial to the appellant. The appellant offered Sanders as a witness and questioned him regarding his investigation and the interview with Thompson and the statement which he took from Thompson. This contention by the appellant is not substantiated by the record in that the trial judge took steps to stop the appellee from pursuing the line of questioning dealing with and in regards to a proposed compromise and settlement. Therefore, we hold that the appellant was not prejudiced and that the jury was not misled or unduly influenced by the questions of the appellee.
Appellant urges that the lower court erred in granting instruction number three to the appellee asserting that the instruction (does not adequately or accurately inform the jurors as to the basis of determining the credibility of witnesses. The instruction could be more accurately drawn, but it does not permit the jury to adopt any reason satisfactory to the jury in determining the credibility of witnesses as was done in Poole v. State, 100 Miss. 158, 56 So. 184 (1911), and Gables v. State, 99 Miss. 217, 54 So. 833 (1911). We conclude that when all the instructions are read together they adequately informed the jury as to the applicable rules of law and as to other factors the jurors could consider in reaching their verdict. Scoggins v. Vicksburg Hospital, Inc., 229 Miss. 770, 91 So.2d 837 (1957); and Neely v. Charleston, 204 Miss. 360, 37 So.2d 495 (1948).
Appellant assigns as error that the trial court erred in allowing interest from the time of the Thompson judgment. Mississippi Code 1942 Annotated section 39 (1956) sets forth the statutory regulations as to interest on judgments. This Court, moreover, has held in a number of cases that interest will be paid at the legal rate of six percent from the date of judgment. Commercial Union Insurance Co. v. Byrne, 248 So.2d 777 (Miss. 1971); Illinois Central R.R. v. Nelson, 245 Miss. 395, 148 So.2d 712 (1963). There is therefore no merit in this contention of the appellant.
For the foregoing reasons, the judgment of the circuit court is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH and SUGG, JJ., concur.