FEDERATED MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

Corey DAVIS, a Minor, By and Through
His Parents And Next Friends, Benny
DAVIS and Susan Davis; Benny Davis
and Susan Davis, in their Individual Ca-
pacities; Wanda Leslie, Individually and
as Administratrix of Rodney Long, a
Minor, Deceased, and as a Personal Rep-
resentative of the Legal Heirs of Rodney
Long; and State Farm Mutual Automo-
bile Insurance Company, Defendants.

Civil Action No. 3:94CV375LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 29, 1995.

J. Wyatt Hazard, Paul V. Ott, Daniel, Cok-
er, Horton & Bell, Jackson, MS, for plaintiff.

William Scott Collins, Mitchell, McNutt,
Threadgill, Smith & Sams, Tupelo, MS; Dan-
iel K. Tucker, Lesle Langston, Langston,
Michael & Bowen, Booneville, MS, for defen-
dants.

*MEMORANDUM OPINION*
*AND ORDER*

TOM S. LEE, District Judge.

In this declaratory judgment action, the
plaintiff, Federated Guaranty Insurance
Company (Federated), has moved for sum-
mary judgment. Separate cross-motions for
summary judgment have been filed by defen-
dants Corey, Susan and Bennie Davis and
their insurer, State Farm Mutual Automobile
Insurance Company (State Farm), and by
defendant Wanda Leslie. The court has con-

sidered the parties' motions, and concludes that summary judgment should be granted for Federated, and that the cross-motions of defendants should be denied.

Federated brought this action seeking a declaration that it has no liability to the defendants under certain policies of automobile insurance. The facts which precipitated this action are as follows. In October 1992, Harry Anthony, the owner and president of Tupelo Ford Tractor, Inc., purchased a 1993 Acura Integra in anticipation of his daughter Christi's upcoming fifteenth birthday. He titled the car to the company, as he did with all of his family and business vehicles and, contemporaneously with his purchase, he had the Acura added to the automobile insurance policies maintained by his business. In particular, at that time, Federated had in force two policies providing coverage for Tupelo Ford Tractor, a commercial general liability policy with limits of $500,000, and a commercial umbrella liability policy providing excess coverage of $1,000,000. Additionally, Anthony had in effect a personal umbrella liability policy.

After obtaining her driver's license in December 1992, Christi became the principal driver of the Acura. She drove the car primarily to and from school and school functions, but was allowed to go other places in the car if she first obtained her father's permission. On the evening of Saturday, March 27, 1993, Christi asked and was given permission by her father to go out in the car. After she and a friend drove around town in the car for awhile, they stopped at an Amoco station where they ran into some friends from school, Corey Davis and Rodney Long. Corey asked Christi if he could drive the Acura, and Christi allowed him to do so, in disregard of a standing instruction from her father that she not let anyone else drive the car. Corey and Rodney left the Amoco station in the Acura and began riding around town; Christi left with friends in another car. While driving the Acura, Corey lost control of the car and it flipped; Rodney was thrown from the car and killed.

At the time of the accident, Corey Davis was insured under a State Farm policy issued to his parents, Benny and Susan Davis,

which provided liability limits of $50,000 per person. State Farm and Federated were both notified of the accident, and Federated immediately began an investigation. On March 31, its representative interviewed Harry Anthony and obtained the pertinent facts about the accident and how Corey Davis had come to be driving the car. Following that conversation, Federated hired an independent adjusting firm, which in early April 1993 secured statements from Christi Anthony and Corey Davis about the events on the night of the accident.

Subsequently, in late April, upon inquiry from a State Farm claims representative, Federated advised that a serious coverage question was presented. However, the following month, Federated offered Rodney Long's mother, Wanda Leslie, $100,000 to settle any claim relating to Rodney's death. Mrs. Leslie did not accept the offer, but instead communicated with an attorney, who commenced negotiations on her behalf with Federated toward a settlement of her claim. Several months later, on October 26, 1993, Federated wrote to Mrs. Leslie's attorney extending an offer to settle the claim for $200,000. But just over a week later, Federated rescinded all settlement offers. No reason was initially given for Federated's about face, but Mrs. Leslie's attorney states that shortly thereafter, he was told by Federated that it was taking the position that Corey Davis was not an insured under its policy.

In March 1994, Mrs. Leslie filed suit in state court against the Davises, the Anthonys and Tupelo Ford Tractor seeking $4,300,000 in damages for her son's wrongful death. Federated is defending her negligent entrust claim against the Anthonys and Tupelo Ford Tractor without any reservation of rights. However, while Federated has also assumed the defense of the Davises, it has done so under a reservation of rights.

■ The coverage issue presented by this case is whether Corey Davis, the operator of the insured vehicle at the time of the accident, was an additional insured within the terms of the omnibus clause of Federated's policy. Federated's commercial general liability policy defines "insureds" to include the named insured and "[a]nyone else while us-

ing with your permission a covered auto."[1] The umbrella policy follows form and includes as insureds "[a]ny additional insured included in 'underlying insurance', but only to the extent that insurance is provided to such additional insured thereunder." Likewise, the personal umbrella liability policy purports to cover the named insured and "any person using an 'auto' ... with your permission...." Federated contends that Corey Davis' operation of the Acura does not fit within these definitions of "insured" since Harry Anthony, the owner of the car and named insured, had neither expressly nor impliedly permitted his use of the car. There is no evidence that Harry Anthony allowed Corey Davis to drive the car. And the court concludes that the undisputed facts of record do not justify an inference that Davis was using the insured vehicle with the implied permission of Mr. Anthony. Thus, his use of the automobile was not covered by the policy.

The parties are in agreement that in order for Corey Davis to be an insured under the omnibus clause of Federated's policies, he must either have had Harry Anthony's express or implied permission.[2] The Mississippi Supreme Court has resolved issues relating to the coverage of omnibus clauses, i.e., permissive use cases, according to the following general principles:

> The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use of the first permittee" and that such "use" is within the coverage of the omnibus clause.

*United States Fidelity & Guar. Co. v. Stafford*, 253 So.2d 388, 392 (Miss.1971) (quoting 7 Am.Jur. *Automobile Insurance* § 117 (1963)). Moreover,

> It is recognized as a general rule that use of an automobile by a third person is not protected where the owner has expressly forbidden it. Where, however, the first permittee has "broad and unfettered domination" over the insured automobile, under certain circumstances permission of the insured may be implied. In particular, this is true where the operation by the second permittee serves some purpose of the first permittee.

*Id.* (quoting *National Farmers Union Property & Casualty Co. v. State Farm Mut. Auto. Ins. Co.*, 277 F.Supp. 542 (D.Mont. 1967)).

Applying these rules, the court in *Stafford* held that the omnibus clause covered the operation of an insured vehicle by a second permittee who, at the time of the accident, was racing the automobile with the express permission of the insured's son, who was a passenger in the car. Though the owner/insured insisted that he had ordered his son not to race or let anyone else drive the car, there was considerable testimony that his son had, in fact, allowed others to drive the car on numerous occasions, and that his father knew of this practice but had raised no objection when he had seen others driving the car. The court found this evidence sufficient to justify the jury's finding that the insured impliedly gave his permission to the second permittee's use by not restricting use of the car solely to his son.

The court also found coverage in *State Farm Mutual Automobile Insurance Co. v. Moore*, 289 So.2d 909 (Miss.1974), for an accident that occurred when the named insured's son allowed a friend to drive the insured automobile. In *Moore*, Mr. Arnold purchased a car for the use of his seventeen-year-old son. He titled the car in his own name, had the license tag issued in his name,

---

**1.** There were certain exceptions, none of which are applicable here.

**2.** Though Tupelo Ford Tractor, Inc. owned the car and is identified as the named insured, since

Harry Anthony, its owner and president, was in charge of the vehicles, permission from him is the equivalent of permission from Tupelo Ford Tractor. *See Thomas v. Diviney Constr. Co.*, 458 So.2d 694 (Miss.1984).

and added the car to his State Farm policy, advising State Farm that he had bought the car for the use of his son, who would be the principal driver. He "turned the car over" to his son, who had the only set of keys. Mr. Arnold told his son more than once not to let anyone else drive the car, but in disregard of his father's instructions and without his father's knowledge, the son did let other students drive the car. On the night of the accident, the son went with some friends to the Barnett Reservoir. Not wanting to drive the car back to town himself, the son told a friend to do so. The accident occurred on the return drive. The court found coverage because the first permittee, the son, was given unrestricted use of the vehicle, i.e., he had "broad, unfettered domination," and because the second permittee, by driving the car back to town for the son, was serving a purpose of the son when the accident occurred.

The defendants liken this case to *Stafford* and *Moore.* Federated, on the other hand, asserts that this case more closely resembles *Vaughn v. State Farm Mutual Automobile Insurance Co.,* 359 So.2d 339 (Miss.1978), *overruled on other grounds, State Farm v. Mettetal,* 534 So.2d 189 (Miss.1989), where the court found there was no coverage. In *Vaughn,* the vehicle in question was owned by E.H. McGarrh and insured under a State Farm policy. The proof established that Mr. McGarrh allowed his ex-wife to keep the car at her home and permitted her unrestricted use of the vehicle. Deborah McGarrh, who lived with her mother, was allowed to use the car upon request, and she used it frequently; but, she could not use it without her mother's permission and her mother kept the key. On the date of the accident, Deborah obtained permission from her mother to drive the car to a skating rink. While there, she let a friend, James Creely, borrow the car. An accident occurred while Creely was driving the car in which a passenger, Vaughn, was injured. The court concluded that these facts did not justify an inference that Creely was using the automobile with the implied

permission of the named insured. In so holding, the court pointed out that Mrs. McGarrh, the first permittee, did not give Creely permission to drive the car, she was not riding in the car at the time of the accident, and he was not using the car to serve any purpose of Mrs. McGarrh.

In accordance with the Mississippi Supreme Court's application of the above-cited principles to the facts in the foregoing cases, the evidence in the case at bar compels the conclusion that Corey Davis' use of the Anthony automobile was not covered by the omnibus clause of Federated's policies. While he obviously had Christi Anthony's express permission to use the car on the night in question, he had neither the express nor implied consent of Harry Anthony, the named insured. In his deposition testimony, Mr. Anthony said that when he bought the Acura, he did so because he knew that with Christi's birthday approaching, he was about to have another licensed driver in the family and wanted an extra car so that when Christi "needed a way to get to school or needed to go anywhere, ... [he] could let her use that car." He explained that while Christi had a set of keys to the car, he never "gave" her the Acura. Rather, he just had the car and let her use it. Moreover, while it appears that Christi had standing permission to drive the car to school and school functions, for "anything other than that," she had to ask her father, or her mother if he was not available, if she could drive it.[3] And to Mr. Anthony's knowledge, she never took the car without permission.

Moreover, it is apparent from his testimony that Mr. Anthony had made it clear to Christi all along that she was not to let anyone else drive the car. When asked during his deposition whether he had placed any limitations or restrictions on Christi's use of the car, he responded:

A. Well, I'd always told her not to let anybody else drive the car. I told her that more than one time. And if I let her use it to go to something at night, she'd have to

3. Though at one point in his deposition, Mr. Anthony testified that he "gave [Christi] permission to drive [the car] to school sometimes," he also stated that she did not have to ask his permission to drive the car to school. For purposes of these motions, the court will assume that Christi had her father's permission to drive the car to school and school functions.

be home at a certain time. Just things like that.

Q. All right. You say that you told her on more than one occasion not to let anybody else use the car?

A. Yes, sir.

.    .    .    .    .

Q. Had you mentioned it to her prior to this wreck?

A. Yes, sir, ever since, you know, she started driving.

There is evidence that despite her father's instructions, Christi had, in fact, allowed friends to drive her car on two or three occasions. There is, however, no proof that Mr. Anthony was aware that she had done so. To the contrary, he testified unequivocally that apart from himself, his wife, Christi, and possibly his son, he had never seen or heard of anyone else driving the car and did not know that she had allowed anyone to drive or borrow the vehicle.

Defendants insinuate that Mr. Anthony knew, or must have known that Christi let other individuals drive the car in view of his acknowledgment that he knew other teenagers drove their friends' cars. But this conclusion does not follow from defendants' premise, for it is apparent from Mr. Anthony's testimony that the very fact of his awareness that other teenagers did so prompted him to admonish Christi against engaging in this practice. When asked why he told Christi not to let anyone else drive her car, Mr. Anthony stated:

Because I live right there in town, and these kids, you know, they all drive each other's cars all the time. And I'd see one in somebody else's car, and another in somebody else's car, and I'd mentioned it to her before.

The court recognizes, as defendants point out, that on the night of the accident, Mr. Anthony did not specifically tell Christi that she was not to let anyone else drive the car. Considering the totality of the evidence, this fact is immaterial. Based on her father's previous instructions, Christi knew she was not supposed to let others drive the car, and it was not necessary that Mr. Anthony repeat this directive each time Christi drove the car.

Based on the evidence of record, a factfinder could not rationally conclude that Christi had unrestricted use, or "broad and unfettered domination" over the automobile.[4] Therefore, Davis' use of the automobile was not covered by the policy.

■ The defendants next claim that Corey Davis must be treated as an insured under the policy because Federated is estopped to deny coverage, or alternatively has waived its right to deny coverage. More specifically, they argue that even though there may not be coverage under the terms of the policy for this accident, Federated has waived its right to assert such because it had knowledge as early as March 31, 1993 of all facts giving rise to its ultimate position that there is no coverage for Corey Davis, yet for months delayed notifying them that it was going to deny coverage. In a related vein, they urge

4. The Mississippi cases are not entirely clear on whether additional elements need be present when the first permittee has "broad and unfettered domination" over the insured vehicle. Here, however, because Christi did not have such unrestricted control over the use of the car, the court need not resolve this issue; it need not consider the other factors identified by the Mississippi Supreme Court as potentially bearing on the inquiry. *See, e.g., United States Fidelity & Guar. Co. v. Stafford,* 253 So.2d 388, 392 (Miss. 1971). The court would note, though, that Christi was not in the car at the time of the accident, nor was her permittee, Corey Davis, serving any purpose of hers in using the car. The court acknowledges, but rejects the contentions of Mrs. Leslie and the Davis defendants that Corey was somehow benefiting Christi by driving the car on the night of the accident. Mrs. Leslie argues that Corey was helping Christi by driving her car that night since, had he not been in her car, the car would have been left unattended while she rode around with other friends. This is absurd. Obviously, if Christi had not let Davis drive her car, she would have had her own car in which to ride around. And in any event, if by this argument she means to suggest that there was a greater danger of harm to a parked vehicle in the town of Fulton, than to one occupied by a teenage boy, she has offered no proof to support that position. That is, she has not identified any hazard posed to unattended vehicles in the town of Fulton. The Davis defendants take a different approach, arguing that Corey and Rodney were on their way to return the vehicle to Christi, for her benefit, when the accident occurred, thus extending coverage. This, too, is patently ridiculous.

that Federated is estopped from denying coverage because by its actions, including its going so far as to make substantial offers of settlement to Rodney Long's family, Federated misled them, to their detriment, into believing that Federated had accepted coverage for Corey Davis. Defendants' arguments on both points fail.

■ Mississippi law unquestionably recognizes that an insurer may lose its right to claim a forfeiture of a policy, or to assert defenses to coverage under its policy, by operation of the doctrines of waiver and estoppel. *See Pitts By and Through Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351 (5th Cir.1991); *Larr v. Minnesota Mut. Life Ins. Co.,* 924 F.2d 65 (5th Cir.1991); *Morris v. American Fidelity Fire Ins. Co.,* 253 Miss. 297, 173 So.2d 618 (1965). As these, and many other cases make clear, it may waive provisions placed in the policy it for its benefit, or it may by its conduct be estopped from asserting defenses that would otherwise be available. However, the Mississippi Supreme Court has consistently held that the related doctrines of waiver and estoppel cannot be applied to broaden the coverage of a policy to include a loss or risk that is not covered by the policy. On this point, the court has said as follows:

> This Court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to include additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.

*Employers Fire Ins. Co. v. Speed,* 242 Miss. 341, 133 So.2d 627, 629 (Miss.1961) (*quoted in Gilley v. Protective Life Ins. Co.,* 17 F.3d 775 (5th Cir.1994)); *see also Mississippi Hosp. & Med. Serv. v. Lumpkin,* 229 So.2d 573 (Miss. 1969) ("[T]he doctrine of waiver or estoppel cannot be used to create a primary liability or to increase the coverage of insurance contracts."); *Frank Gardner Hardware & Supply Co. v. St. Paul Fire & Marine Ins. Co.,* 245 Miss. 320, 148 So.2d 190 (1963) (doctrines of waiver and estoppel cannot be used to extend coverage of policy or create primary liability, but may only affect rights reserved in it). This is consistent with the majority rule:

> It has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. While an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel.

16B Appleman & Appleman, *Insurance Law and Practice* § 9090, at 579–82 (1981).[5]

■ Defendants do not dispute the principle that coverage cannot be expanded by waiver and estoppel. Rather, they argue that their claim that Corey Davis was a permissive user is not an attempt to broaden or extend coverage at all. The issue, they say, is not whether the policy covers permissive users, for clearly it does; it is, instead, whether Corey Davis was a permissive user. Manifestly, since the omnibus clause by its terms applies only to permissive users, and since Corey Davis was not, in fact, a permissive user, then to hold that he was covered would be an extension of coverage. In other words, to find coverage for a non-permissive user would be to improperly extend coverage. *Cf. Gilley v. Protective Life Ins. Co.,* 17 F.3d 775 (5th Cir.1994) (extending insurance coverage to insured's son would expand poli-

---

**5.** Though there is some indication in the authorities from other jurisdictions that this principle is eroding, *see* 16B Appleman & Appleman, *Insurance Law and Practice,* § 9090 (Supp.1994), and cases cited therein, to date, the Mississippi court has given no indication that it would abandon this rule.

cy to cover a "risk" or "loss" not contemplated by language of policy); *Maryland Cas. Co. v. Adams*, 159 Miss. 88, 131 So. 544 (1931) (waiver cannot be relied on to extend automobile policy to cover vehicles not specifically within policy). In summary, this is a matter which relates not to a condition of coverage, or a condition of forfeiture, but which goes directly to the scope of coverage. As such, neither waiver nor estoppel is appropriately invoked. Accordingly, the court must reject defendants' claims of waiver and estoppel and consequently will grant Federated's motion for summary judgment.[6]

Based on the foregoing, it is ordered that Federated's motion for summary judgment is granted. It is further ordered that defendants' cross-motions for summary judgment are denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

---

**6.** The court would note that Mrs. Leslie, as a stranger to the contract of insurance who has not secured a judgment against Corey Davis, lacks standing to assert a right to coverage for Corey Davis in any event. *See Cowley v. Texas Snubbing Control, Inc.,* 812 F.Supp. 1437 (S.D.Miss. 1992). Moreover, while the question on the Davises is perhaps a bit closer, the court doubts any defendant has suffered such prejudice as would sustain the estoppel claim. Neither Mrs. Leslie nor the Davises can claim prejudice because of Mrs. Leslie's failure to accept a settlement offer of sums which Federated was not contractually bound to pay. Moreover, the Davises have been defended by Federated from the time suit was filed against them, and they have identified no other potential prejudice.