**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-60145
_____


NATIONWIDE MUTUAL INSURANCE COMPANY,

Plaintiff-Appellant,

VERSUS

JOE G. DUNNING, JR.; CYNTHIA S. DUNNING,

Defendants-Appellants,

VERSUS

JENNIFER B. MORRIS; COURTNEY R. LUTZ; CRAIG PORTIS; THE ESTATE OF
PAUL HOLLOWAY,

Defendants-Appellees,

VERSUS

PROGRESSIVE GULF INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Mississippi
_____


May 22, 2001

Before STEWART, PARKER, Circuit Judges, and GOLDBERG, Judge.[*]

ROBERT M. PARKER, Circuit Judge:

Appellants seek review of the district court's determination

_____

[*]Judge of the Court of International Trade, sitting by
designation.

1

of insurance coverage for bodily injuries and death resulting from a car accident in 1997. We must determine whether Paul Holloway qualifies as an insured under the policy issued by Progressive Gulf Insurance Company ("Progressive") and whether Jennifer Morris, Courtney Lutz, and Craig Portis are insureds under the terms of the policy issued by Nationwide Insurance Company and the provisions of the Mississippi Uninsured Motorist Statute. *See* MISS. CODE ANN. § 83-11-101 (1980).

## I. Facts

Early in the morning of November 27, 1997, Virginia Dunning, Paul Holloway, Courtney Lutz, Jennifer Morris, and Craig Portis were involved in an automobile accident, which killed Virginia Dunning and Paul Holloway and seriously injured the other passengers. While on their way to Jennifer Morris's house, Holloway lost control of the 1991 Mitsubishi Eclipse and struck a light pole near the Mississippi-Tennessee border. Unbeknownst to the children's parents, the group had driven to a dance club in downtown Memphis where, despite their age, they were admitted and served alcohol. Alcohol was the primary cause of the accident.

The Eclipse belonged to Joe Dunning, Virginia's father. Mr. Dunning helped finance the car for his daughter so that she would have transportation to and from school, cheerleading practice, and work. Virginia had a set of keys to the car and personally paid the car note. Virginia was the primary driver of the car and

2

usually paid for fuel, but Mr. Dunning took responsibility for maintenance and repairs.

Mr. Dunning generally allowed Virginia to use the car for social purposes. However, he specifically instructed Virginia that she should not let others drive the car and that she should not drive around with groups of other teenagers. In addition to these specific instructions pertaining to the car, Mr. Dunning, like any responsible parent, required Virginia to seek his permission before going out in the evening. Mr. and Mrs. Dunning would usually require Virginia to remain close to their Mississippi home on the outskirts of Memphis. They had never given her permission to drive to the downtown Memphis area while out with her friends. Virginia had a curfew between 11:30 p.m. and 12:00 a.m.

On the evening before the accident, Virginia asked her parents if she could spend the night at Jennifer Morris's home. She told her parents that she and Jennifer planned to rent a movie. Her parents agreed. Virginia, Jennifer Morris, and Courtney Lutz met Paul Holloway and Craig Portis later that evening. Virginia allowed Holloway, her boyfriend, to drive the group to Memphis. Mr. Dunning did not give either his daughter or Paul Holloway express permission to take the car to Memphis the evening of the accident.

Joe Dunning had an automobile insurance policy with Nationwide that covered the Eclipse and three other automobiles. The policy included liability and uninsured motorist coverage limits of

3

$50,000 for each person and $100,000 for each accident. Nationwide filed this declaratory judgment action seeking a determination of the rights of the claimants to the proceeds of the policy. Paul Holloway's insurance provider, Progressive, filed a cross-claim. Progressive's policy provided liability coverage with limits of $25,000 per person and $50,000 per accident. Both insurance companies argued that Holloway, Morris, Lutz, and Portis did not qualify as insureds as that term is defined in each policy and under Mississippi law.

On August 9, 1999, the district court granted summary judgment denying coverage under the Progressive policy and denied summary judgment in favor of coverage under the Nationwide policy. The court concluded that Holloway was not insured under the Progressive policy because he did not have implied permission to drive the car. As to coverage under Nationwide's policy, the court concluded that Virginia Dunning had broad and unfettered domination over the vehicle and that Paul Holloway therefore had Joe Dunning's implied permission to drive the car. On October 28, 1999, the district court set aside its order granting summary judgment in favor of Progressive and scheduled a nonjury trial.

At trial, the parties stated that they did not intend to offer any more evidence than they included in their motions for summary judgment. The parties also indicated that the remaining issues concerning the apportionment of the policy limits to the injured parties would be resolved in mediation. Having already reviewed

4

the summary judgment evidence, the district court entered a final judgment holding that Holloway was insured under the Progressive policy and that Holloway, Morris, Lutz, and Portis were insureds for purposes of uninsured motorist coverage under the Nationwide policy. The district court adopted the policy limits to which the parties agreed at trial. The policy limits are not contested on appeal.[1]

## II. Standard of Review

The parties contest whether we should review the evidence as if the district court granted summary judgment or whether we should review the record as an appeal from a nonjury civil trial. At the beginning of the scheduled nonjury trial, Nationwide and Progressive stated that they would not present any additional evidence than that already submitted in their summary judgment motions. The district court declined to hear the same evidence a

---

[1]The Dunnings argue on appeal that the district court did not have evidence to support a finding that the vehicle was an "uninsured motor vehicle" under Mississippi statute. *See* Miss. Code Ann. § 83-11-103(c)(iii); *Wickline v. U.S.F. & G.*, 530 So.2d 708 (Miss. 1988). The Dunnings claim that without evidence of the injured passengers' own uninsured motorist coverage there is no basis for determining whether the vehicle was underinsured as to each passenger. We agree. However, "the stacking of policies for purposes of determining whether a vehicle [is] underinsured [is] different from the stacking of policies for the purposes of recovering damages." *State Farm Mut. Ins. Co. v. Davis*, 613 So.2d 1179, 1183 (Miss. 1992). Neither the district court nor the parties raised an issue concerning whether the Eclipse qualified as an uninsured motor vehicle as to each of the injured passengers. Presumably the parties sought to determine the extent to which each injured passenger is entitled to compensation at mediation. We therefore do not address the Dunnings' argument.

5

second time and instead adopted its reasoning in its August 9, 1999 summary judgment Memorandum Opinion.

The district court was free to make any factual and credibility determinations from the documentary and testimonial evidence already in the record. It was not necessary for the parties to resubmit evidence that was already in the record at the nonjury trial. We therefore employ the standard of review applicable to any other nonjury civil case. We review conclusions of law *de novo* and findings of fact for clear error. *See Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995). "When reviewing mixed questions of law and fact, [we] . . . reverse only if the findings are based on a misunderstanding of the law or a clearly erroneous view of the facts." *Tokyo Marine & Fire Ins. Co. v. FLORA MV*, 235 F.3d 963, 966 (5th Cir. 2001).

### III. The Progressive Policy

Progressive contends that the injuries caused by Paul Holloway's negligence are not covered under its policy because Holloway was not a permissive user of Mr. Dunning's car. The Progressive policy provides coverage for bodily injury "for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of a vehicle." The policy's omnibus clause defines an "insured person" as

> (4) you with respect to an accident arising out of the maintenance or use of any vehicle with the express or

6

implied permission of the owner of the vehicle.

"Owner of the vehicle" means a person who "holds legal title to the vehicle." Therefore, if Paul Holloway had the express or implied permission of Joe Dunning, the vehicle's owner, then the Progressive policy will cover bodily injuries arising from the accident. Since Mr. Dunning did not expressly permit Holloway to use the car on the night of the accident, we address only whether Mr. Dunning's permission should be implied.

A. Mississippi Law Governing Permissive Use

Permissive use of automobiles is divided into two categories under Mississippi law. *See Vaughn v. State Farm Mutual Auto. Ins. Co.*, 359 So.2d 339, 341–42 (Miss. 1978), *overruled on other grounds*, *State Farm Mutual Auto. Ins. Co. v. Mettetal*, 534 So.2d 189 (Miss. 1988). First, permission may arise if a vehicle owner gives restricted permission to a permittee, and the use of the vehicle is within the boundaries of the owner's restrictions. An insured's policy will cover injuries resulting from the use of a vehicle so long as the use is "within the time, geographic and purpose limitations of the permission granted, and [constitutes] only a minor deviation from the permission granted." *Id.* at 342 (citing *Travelers Indemnity Co. v. Watkins*, 209 So.2d 630 (Miss. 1968)).

The second category pertains to a permittee's unrestricted use of an insured automobile. *See id.* If a permittee has unrestricted

7

use, then injuries arising from the operation of the vehicle by a third party will be covered as long as the third party uses the vehicle to serve some purpose of the permittee. *See id.* (citing *International Serv. Ins. Co. v. Ballard*, 216 So.2d 535 (Miss. 1968)). Even if an owner places restrictions on the vehicle's use, courts may nonetheless find that the owner's permission is unrestricted when a permittee has "broad and unfettered domination" over the insured automobile. *United States Fidelity & Guarantee Co. v. Stafford*, 253 So.2d 388, 392 (Miss. 1971), *overruled on other grounds*, *State Farm Mutual Auto. Ins. Co. v. Mettetal*, 534 So.2d 189 (Miss. 1988). If the permittee has broad and unfettered domination, then the owner's permission may, in certain circumstances, be implied. *See id*. Mississippi courts have expressed these guidelines in the following manner:

> The "general rule" that a permittee may not allow a third party to "use" the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee. The courts generally reason that under such circumstances the second permittee is "operating" the car for the "use of the first permittee" and that such "use"

8

is within the coverage of the omnibus clause.

*Stafford*, 253 So.2d at 392 (quoting 7 AM. JUR. *Automobile Insurance* § 117 (1963)).  The court continued:

> It is recognized that as a general rule the use of an automobile by a third person is not protected where the owner has expressly forbidden it.  Where, however, the first permittee has "broad and unfettered domination" over the insured automobile, under certain circumstances permission of the insured may be implied.  In particular, this is true where the operation by the second permittee serves some purpose of the first permittee.

*Id.* (quoting *National Farmers Union Prop. & Cas. Co. v. State Farm Mut. Auto Ins. Co.*, 227 F. Supp. 542 (Mont. 1967)).

The Mississippi Supreme Court applied these guidelines in the following three cases.  In *Stafford*, *supra*, Wayne Plunkett permitted his friend, C.B. Thompson, Jr., to race a 1962 Chevrolet Impala owned by Wayne's father, Roy Plunkett.  *See id.* at 389. During the race, Thompson struck and killed a bystander.  *See id.* Wayne was a passenger in the car at the time of the accident.  *See id.*

The evidence demonstrated that Wayne had full authority and control over the automobile.  *See id.* at 392.  Mr. Plunkett allowed his son to use the vehicle to travel to and from school, work, and social events.  *See id.*  Wayne made payments on the car and kept

9

his own set of keys. *See id.* Although Roy Plunkett insisted that he prohibited third parties from driving the car, the testimony revealed that his son allowed his friends to use the vehicle in Mr. Plunkett's presence. *See id.* Based on these facts, the court concluded that there was sufficient evidence for the jury to conclude that Mr. Plunkett impliedly permitted his son's friend to use the car. *See id.*

In *State Farm Mutual Automobile Insurance Company v. Moore*, 289 So.2d 909 (Miss. 1974), *overruled on other grounds*, *State Farm Mutual Auto. Ins. Co. v. Mettetal*, 534 So.2d 189 (Miss. 1988), James Arnold purchased a 1963 Chevrolet Corvair for his son, Jim Arnold, but retained title to the car in his name. *See id*. at 910. Jim had the only set of keys to the car. *See id*. at 912. Jim's father testified that neither he nor his wife ever drove the car and that he specifically instructed Jim not to permit others to use it. *See id*. at 910. He also insisted that he was unaware that any of Jim's friends had ever driven the car. *See id*. On the night of the accident, Jim allowed his friend, Jack Millican, to drive Jim and a group of teenagers home. *See id*. Millican overturned the car on the way home, injuring a passenger. *See id*. The court held that there was sufficient evidence to support the trial court's conclusion that Jim had broad and unfettered domination over the vehicle and that his friend had the implied consent of Jim's father. *See id.* at 912.

10

In *Vaughn*, *supra*, E.H. McGarrh gave his ex-wife unrestricted permission to use his vehicle for the benefit of their children. *See Vaughn*, 359 So.2d at 340. The ex-wife would in turn allow their daughter, Deborah, to drive the car on certain occasions. *See id*. Deborah had to request permission every time she used the car. *See id*. On the evening of the accident, Deborah received her mother's express permission to drive the car to a local skating rink. *See id*. At the skating rink, Deborah allowed Michael Vaughn and James Creely to take the car on an errand. *See id*. Deborah was not a passenger in the vehicle at the time of the accident. *See id*. Applying the guidelines set forth in *Stafford*, the court concluded that Vaughn and Creely did not have implied permission to use the car. *See id*. at 343. The court noted that the vehicle was not being used for Deborah's benefit, let alone for the benefit of the first permittee, Deborah's mother. *See id.*

B. Implied Permissive Use in this Case

In order to establish coverage under the Progressive policy, the evidence must show that Virginia had broad and unfettered domination over the insured vehicle and that Holloway's operation of the vehicle served some purpose of Virginia. *See Stafford*, 253 So.2d at 392.[2] Appellants do not dispute that Holloway's operation

_____

[2]We limit our review of the facts to whether Virginia had unrestricted use of her father's vehicle. *See Vaughn*, 359 So.2d at 342. Under the law pertaining to restricted use, the Progressive policy would not cover the injuries resulting from the accident.

11

of the vehicle served the purpose of driving Virginia to Jennifer Morris's home.  Rather, Appellants argue that Virginia did not have sufficient authority and control over the vehicle.

The evidence is undisputed that Mr. Dunning withheld title to the car and took responsibility for repairs.  He instructed Virginia not to allow others to drive the car and forbade her from simply driving around town with a group of teenagers.  Although testimony reveals that Virginia often let Holloway drive the car, Mr. Dunning was not aware of the practice.  In addition to his restrictions specific to the car, Mr. Dunning required Virginia to seek his permission before going out with friends.  He also implemented a midnight curfew and other standing rules governing her social outings.  Based on this evidence, appellants argue that Virginia did not have broad and unfettered domination over the vehicle.

The term "broad and unfettered domination" has little meaning apart from the public policies for which the term was created to address.  "Unfettered," in a literal sense, means free from restraints or limitations.  *See* WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2495 (1981).  In contrast to the literal definition, the Mississippi Supreme Court adopted the term to address situations in which a vehicle owner restricts third party use.  *See Stafford*, 253

---

Virginia Dunning clearly deviated from her father's restrictions by allowing her boyfriend to drive the car to and from downtown Memphis.

So.2d at 393 (stating that "broad and unfettered domination" is an exception to the general rule that permission would not be implied when a vehicle owner expressly prohibits use by a third party). As an exception to a vehicle owner's restrictions on third party use, the court's adoption of the "broad and unfettered domination" language follows Mississippi public policy favoring protection of individuals injured by careless drivers. *See id.* (citing *Traveler's Indem. Co. v. Watkins*, 209 So.2d 630 (Miss. 1968)). "[T]he purpose of the omnibus clause is to protect the named insured, the person within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway." *Id. See also Thomas v. Deviney Constr. Co.*, 458 So.2d 694, 697 (Miss. 1984). Any limitation on coverage should be liberally construed in favor of the insured. *See Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss. 1999). Guided by Mississippi public policy and the court's decisions in *Stafford*, *Moore*, and *Vaughn*, we find that Virginia had broad and unfettered control over her father's vehicle.

The undisputed evidence establishes that Virginia chose the car at the dealership, made monthly car payments, and kept her own set of keys. While Mr. Dunning occasionally used the car, Virginia was the primary driver. She drove the car to school, after-school activities, work, and social outings. Apart from her father's restrictions that she prohibit others from driving the car and his

13

instruction that she not drive around with other teenagers, Virginia was free to use the car on a daily basis as she saw fit. Even though she was required to ask permission before social outings, she never was required to ask specific permission to use the car. In effect, Mr. Dunning's part in purchasing the car was for Virginia's benefit alone. Any restrictions concerning the places she drove and the times she used the car were incidental to her parent's general rules governing her social life.

Appellants cite *Federated Mut. Ins. Co. v. Davis*, 919 F. Supp. 1001 (S.D. Miss. 1995), as persuasive authority for their position. Indeed, the facts in *Davis* closely resemble the facts in this case. Christi Anthony's father bought a car as an extra family vehicle for Christi to use as transportation to school and school functions. Her father required specific permission to use the car for any other purpose, including social outings. The district court concluded that Christi Anthony did not have broad and unfettered domination over the car as a matter of law.

The district court's conclusion in *Davis* could potentially be construed as holding that a teenage driver cannot, as a matter of law, have broad and unfettered domination over his or her parents' vehicle as long as the parents place general limitations on the car's use. We are not persuaded that general parental restrictions over the use of a vehicle will preclude coverage for the negligence of a third party driver in every case. Barring coverage whenever

14

a parent places the slightest restrictions on the use of a car undermines Mississippi's public policy favoring coverage for injured persons. Instead, courts must review the particular facts of each case to determine whether the permittee exercised sufficient authority and control over the owner's vehicle. *See Moore*, 289 So.2d at 912.

In this case, the district court did not err by finding that Virginia had broad and unfettered domination over the use of the automobile. Accordingly, we find that Paul Holloway had Mr. Dunning's implied permission to use the vehicle on the night of the accident. The Progressive policy therefore covers bodily injuries resulting from the accident to the extent of the policy limits.

IV. Coverage Under the Nationwide Policy

Nationwide contends that Jennifer Morris, Courtney Lutz, and Craig Portis were not insured as that term is defined in the uninsured motorist provisions of its policy and the Mississippi Uninsured Motorist Act.[3] "In order to recover the UM benefits provided by an insurance policy, the claimant must first prove that he/she is an 'insured' under either the insurance policy and/or the UM statute." *Davis*, 613 So.2d at 1180. Mississippi's uninsured motorist statute provides the following definition of an "insured":

---

[3]We cannot review the terms of the Nationwide endorsement pertaining to uninsured motorist coverage for bodily injury. The copies of the endorsement in the record are incomplete. Page two of the endorsement, which presumably states the relevant terms of uninsured motorist coverage, is missing.

15

(b) The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" in this section shall apply only to the uninsured motorist portion of the policy.

MISS. CODE ANN. § 83-11-103(b).

Nationwide argues that the injured passengers are not insureds because Paul Holloway did not have implied permission to use the vehicle. In order to qualify as a guest in an uninsured motor vehicle, Nationwide contends that the vehicle must be used with the consent, express or implied, of the owner.[4] Mississippi courts have not addressed this issue and, since we have already concluded that Paul Holloway had implied permission to use the vehicle, there is no need to resolve the issue on appeal. As guests in the

---

[4]*See, e.g*, *Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co.*, 125 S.E.2d 840, 843 (Va. App. 1962) (holding that a guest in "a motor vehicle to which the policy applies" means a guest in a vehicle that is being used with the express or implied permission of the owner). *But see Unisun Ins. Co. v. Schmidt*, 529 S.E.2d 280, 282 (S.C. 2000) (declining to adopt such a strict interpretation of a "motor vehicle to which the policy applies").

16

vehicle driven by Paul Holloway with Joe Dunnning, Jr.'s implied consent, Jennifer Morris, Courtney Lutz, and Craig Portis were insureds for purposes of Nationwide's uninsured motorist coverage.

## V. Conclusion

We affirm the district court's finding that Paul Holloway had implied permission to use the vehicle for purposes of coverage under the Progressive policy. We also affirm the district court's determination that the injured passengers were "insureds" for purposes of coverage under Mississippi's uninsured motorist statute.

AFFIRMED.